**Alfred J. JOZEN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 87–143.**

Supreme Court of Wyoming.

Dec. 18, 1987.

---

Julie D. Naylor, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Lee E. Miller, Legal Intern, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

BROWN, Chief Justice.

Appellant Alfred Jozen was convicted by a Laramie County jury of burglary and was sentenced to the penitentiary for a term of not less than two nor more than four years. Two issues are raised on appeal:

"1. Was it error to give Instruction No. 11?

"2. Whether there was sufficient evidence to sustain Appellant's conviction."

We will affirm.

On November 23, 1986, Francis Coggins, the victim of the burglary, encountered Bill Ellis at a bar in Cheyenne, Wyoming. Sometime later, Coggins offered Ellis a ride home; Coggins' van broke down; and the two men took a taxi to Coggins' home, where Ellis spent the night on Coggins' couch. The following morning, before Coggins arose, Ellis called a taxi in order to pick up his roommate Al Jozen, the appellant, and return to Coggins' residence. Upon returning, Ellis awakened Coggins to pay for the taxi and plans were made for appellant to repair Coggins' van.

Coggins and Jozen left to retrieve and repair the van while Ellis was left asleep on Coggins' couch. Ellis was alone in Coggins' house until Coggins and appellant returned with the repaired vehicle, a period of about one hour.

At this point, the three men embarked on a tavern hopping spree with appellant driving Coggins' van, apparently in order to determine the success of the earlier repairs. Appellant subsequently noticed and brought to Coggins' attention a front-end problem with the vehicle. This problem, and the possibility of appellant doing the necessary repairs, was discussed over drinks at the Eagles Nest. Sometime in the mid-afternoon, Coggins drove Ellis

home and then rejoined appellant at the Eagles Nest.

After appellant and Coggins journeyed on to the Four Winds, it was decided that appellant would keep the van and make further repairs. At this point, Coggins gave appellant his key ring containing the key to the van, keys to his house and various other keys. The pair next proceeded to the Wigwam Bar in the Plains Hotel. Sometime thereafter, appellant disappeared and, when Coggins looked for his van outside of the Plains Hotel, it also was gone. As a result of their prior arrangement regarding repair of the van, Coggins apparently was not particularly concerned that Jozen had the van.

Upon eventually arriving home by way of taxi, about 10:00 p.m., Coggins was informed by his wife that some of her jewelry was missing. Coggins suspected Ellis and he and his wife decided to look for Ellis and appellant. They left their home about 10:30 p.m. and searched most of the local bars without success in locating either Ellis or appellant. Mr. and Mrs. Coggins returned home at about midnight and discovered that, during their absence, their home had been burglarized. Among the missing property was a television, a VCR and some stereo equipment.

Coggins called the police and reported the burglary. The police quickly located the van parked outside of the Plains Hotel. The police made a cursory search of the van and found a plastic piece off of a VCR similar to the one Coggins reported stolen. They did not locate the missing keys. In a later search of the vehicle, Coggins found a grey shirt that appellant had been wearing on November 24, a plastic hinge from a stereo similar to the one stolen and the missing keys. The police found no evidence of forced entry into the Coggins' home. Testimony at trial indicated that the door to the Coggins' home locked automatically when closed.

On December 4, 1986, the police arranged for an informant, Bret Brooksmith, to attempt to purchase several electronic items from appellant. Subsequent to this agreement, the police recovered the missing television, VCR and stereo equipment from Brooksmith's home. On the evening of December 4, Brooksmith was wired with a body mike and given two $100 bills, the serial numbers of which had been recorded. Brooksmith was taken to appellant's residence and sent in ostensibly to complete the transaction involving the stolen items. The body mike malfunctioned so no record was available of the transaction between Brooksmith and appellant. In any event, when Brooksmith left appellant's residence, the police went in and found the two marked bills on appellant's person. The informant, Brooksmith, could not be located for trial.

I

■ Appellant's first contention is that it was error for the trial court to give the jury Instruction No. 11 over defense counsel's objection. Instruction No. 11 read:

"There is evidence in this case of prior conviction on the part of one of the witnesses. You are instructed by this Court that evidence of a witness' prior conviction of a crime is to be considered by the jury only insofar that it may affect the credibility of the witness."

Defense counsel objected to this instruction, as a matter of trial strategy, because the instruction might draw attention to the only witness who had a prior felony conviction, the defendant's alibi witness. The instruction also was objected to on the basis that it invaded the province of the jury.

Rule 51, Wyoming Rules of Civil Procedure, is made applicable to criminal proceedings by Rule 31, Wyoming Rules of Criminal Procedure; *Grable v. State*, Wyo., 649 P.2d 663 (1982). Rule 51, W.R.C.P. provides, in pertinent part:

" * * * Before the argument of the case to the jury is begun, the court shall give to the jury such instructions on the law as may be necessary * * *."

Regarding the purpose of jury instructions, we have said:

" * * * It is the function of instructions to give the jury guidance in reference to the law of the case to assist it in arriving

at correct conclusions. * * *" *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* Wyo., 664 P.2d 27, 32 (1983).

The instruction at issue is a limiting instruction, operating to limit the jury's consideration of a witness' prior conviction to the question of that witness' credibility. In *Sybert v. State,* Wyo., 724 P.2d 463, 467 (1986), we recognized that trial counsel may decide against requesting a limiting instruction as a matter of trial strategy. *Sybert v. State,* supra, does not, however, as appellant seems to contend, establish that the trial court cannot, in its own discretion, give a limiting instruction. Indeed, in the Sybert case, this court addressed the question of whether the failure of the court to give a limiting instruction on its own motion constituted plain error. Although we held that such a failure did not constitute plain error, Sybert cannot be read as prohibiting the trial court from giving a limiting instruction sua sponte.

Although we have not addressed this exact question previously, substantial authority supports our position. In 1 D. Louisell and C. Mueller, Federal Evidence, § 45 at 348 (1977), it is stated:

"The area in which the judge has discretion with respect to limiting instructions is very broad. *The trial judge may give limiting instructions even though not requested to do so, even over the objection of trial counsel,* and may decline to give instructions even though proper in form and content where he believes that the points are better covered elsewhere in his charge." (Emphasis added.)

The United States Supreme Court, in *Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), held that the giving of a cautionary instruction, over the defendant's objection, cautioning the jury not to draw any inferences from the defendant's decision against testifying did not violate the defendant's privilege against self-incrimination nor his right to counsel. In Wright, Federal Practice and Procedure: Criminal 2d, § 484 at 709 (1982), it is stated:

" * * * If an instruction is correct, it is not error to give it even though defendant did not want it and objected to it."

Instruction No. 11 was a correct statement of the law. See, Rule 609(a), Wyoming Rules of Evidence. Giving the instruction over appellant's objection did not constitute error.

## II

Appellant's second contention is that the evidence was insufficient to sustain his conviction. Appellant moved for a judgment of acquittal at the close of the state's case, and renewed the motion after the defense rested. After the trial, appellant filed a motion for a new trial and a motion for acquittal after jury verdict, both based on insufficiency of the evidence.

Our standard for evaluating the sufficiency of the evidence in a criminal case was recently expressed in *Capshaw v. State,* Wyo., 737 P.2d 740, 744–745 (1987), quoting from *Dangel v. State,* Wyo., 724 P.2d 1145, 1148 (1986):

" ' * * * [T]his court is to examine all the evidence in the light most favorable to the state to determine if there is sufficient evidence to uphold the verdict.' [Citations.]"

We went on to explain, quoting *Broom v. State,* Wyo., 695 P.2d 640, 642 (1985):

" ' * * * [I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.'

" * * *

" 'It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence.' [Citations.]"

■ Pursuant to the provisions of § 6–3–301(a), W.S.1977 (1986 Cum.Supp.), the state had the burden of proving beyond a reasonable doubt that appellant (1) entered the Coggins' residence, (2) without the consent of the person in lawful possession, and (3) with the intent to steal. There was no dispute in this case that entry was made into the Coggins' residence without consent. Evidence that it was appellant who made the unauthorized entry with intent to steal was circumstantial. Circumstantial evidence possesses the same standing and stature as direct evidence. *Jones v. State*, Wyo., 568 P.2d 837, 845 (1977).

Appellant concedes that he had the opportunity to commit the crime, but asserts that opportunity alone is insufficient to sustain a conviction. While that statement is correct, we pointed out in *Jones v. State*, supra at 845, " * * * It is also true, however, that evidence of opportunity to commit the act is a link, which considered in connection with other incriminating facts, may prove circumstantially that an accused did commit the alleged crime. * * * " Also of significance to the question of opportunity is the distinction this court made in *King v. State*, Wyo., 718 P.2d 452 (1986), between a general opportunity available to any number of persons as opposed to an opportunity with specific reference to the accused. In *King v. State*, supra, evidence of a general opportunity, available to many, was determined to be insufficient corroboration to sustain a conviction for burglary based on possession of the stolen goods.

■ Appellant, in this case, had a unique opportunity not available to others to commit the burglary; he had the keys to the Coggins' residence. In addition to this specific opportunity, there were other incriminating facts the jury was entitled to consider in finding appellant guilty. The burglary occurred during the time appellant had Coggins' keys. The police found no evidence of forced entry, giving rise to the inference the intruder had a key. Also incriminating were the pieces of the stolen items found in the van along with appellant's shirt. Additionally, the jury could consider the transaction between appellant and the informant Bret Brooksmith, and conclude that appellant accepted $200 in payment for the stolen articles he previously had transferred to Brooksmith.

The evidence was sufficient to sustain appellant's conviction. The combination of a specific opportunity with other incriminating facts was present to establish appellant's guilt.

Affirmed.

URBIGKIT, J., filed a concurring opinion.

URBIGKIT, Justice, concurring.

I concur in the result to affirm the conviction, and specially concur to discuss the "credibility only" limiting instruction to which objection was taken by the litigant presenting the witness. I would find guidance in a further sentence in the same section of 1 Louisell and Mueller, Federal Evidence § 45 at 348 quoted by the majority opinion, which in amplification announces:

"* * * The trial judge should, however, solicit and respect the views of trial counsel on the desirability of giving instructions, so as to protect the role of counsel in assessing the risk of jury misuse of the evidence, which role is implicitly assigned to counsel by Rule 105."

My discussion of the converse effects of limiting instructions in *Clarke v. Vandermeer*, Wyo., 740 P.2d 921, 929 (1987), Urbigkit, J., dissenting, will not be reiterated here. See also *Shields v. Carnahan*, Wyo., 744 P.2d 1115 (1987). May it suffice to recall that we deal with the recollective support and the persuasive augmentation of repetition, and particularly so when spoken "by the judge." "What I hear once, I suspect; what I hear twice, I think; what I then hear again, I come to know, even if determining that the world is flat."

Within the confines of an organized system and justified control of the court process, the trial court should permit counsel to analyze, interpret, and develop a trial plan and desired evidence. With something more than one of every 38 adults of our

society having achieved the characterization of being a convict, avoidance of this number of persons as witnesses is neither reasonable nor possible. In some cases, it may be that these persons' inability to lie as well as benighted brothers, serves as the cause why they are, and the others are not. It is suggested that our system, without age or characterization differential, should look at the witness in terms of individual believability and his or her testimony in terms of intrinsic reasonableness. Some courts have moved away from the automatic exposure of felony conviction status as a demeaning characterization in witness cross-examination. I do not expect this court to go that far this fast, but would leave in conception for the perceptive attorney to assess whether the "favorable" limiting instruction may actually be deadly.

In this case, the testimony of the witness was so inherently unbelievable that neither a cape nor a halo could have authenticated validation. Consequently, *in this case*, I would find mistake in giving an unwanted limiting instruction of this kind, but not as here to constitute reversible error.

My precept was recognized by Justice Stevens dissenting in *Lakeside v. Oregon*, 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978), in discussion of the differentiated subject of a limiting instruction recognizing the witness' right to exercise privilege against self-incrimination:

> "It may be wise for a trial judge not to give such a cautionary instruction over a defendant's objection. And each State is, of course, free to forbid its trial judges from doing so as a matter of state law."

As a case specifically taking that position, see *Russell v. State*, 240 Ark. 97, 398 S.W. 2d 213 (1966).

Reason dictates that attorneys and not the court should normally provide the analysis whether or not a "helpful" witness-qualification limiting instruction should be given.