**Bruce J. FISCHER, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–142.**

Supreme Court of Wyoming.

May 16, 1991.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and David Gosar, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Theodore E. Lauer, Director of the Prosecution Assistance Program, and William A. Fogarty, Jr., Student Intern for the Prosecution Assistance Program, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

OPINION

MACY, Justice.

Appellant Bruce J. Fischer appeals from his conviction for felony larceny.

We reverse and remand.

Appellant presents the following issues for our review:

ISSUE I

Was sufficient evidence presented on the Kwik Shop larceny to sustain a guilty verdict?

ISSUE II

Did joinder of the two charges in this case deny Appellant his constitutional right to a fair trial?

Early in the morning of June 16, 1989, the Campbell County sheriff's department received a report of a possible larceny at the Antelope Valley Kwik Shop, a twenty-four-hour convenience store in Gillette, Wyoming. The investigating officer determined that on the previous day two money bags had been taken from the Kwik Shop safe located behind the check-out counter in the front of the store. One of the money bags contained $2,238.90 in currency, loose coins, and checks, and the other bag contained $169 in rolled coins. The safe had intentionally been left open for employee

access during the course of business on June 15, 1989.

After talking with the store manager and the clerks who had worked at the Kwik Shop on the day of the larceny, the investigating officer determined that the theft had occurred during the three-hour period between approximately nine o'clock and midnight on the evening of June 15, 1989. Recalling that Appellant had been in the store that evening, both the store manager and one of the store clerks identified Appellant as a possible suspect.

In attempting to locate Appellant, the investigating officer contacted Appellant's landlady who expressed concern for property she had loaned to Appellant so that he could furnish his apartment. The investigating officer accompanied the landlady to Appellant's apartment where they discovered that Appellant had vacated the premises and had removed the borrowed furnishings.

On the basis of this evidence, the investigating officer obtained a warrant for Appellant's arrest. The information from the warrant was entered into the National Crime Information Center computer system. The warrant alleged two offenses— felony larceny of the Kwik Shop and felony larceny by bailee of the furniture and other personal property. On June 17, 1989, Appellant was arrested in Bloomington, Minnesota. Subsequent to Appellant's arrest, three rolls of dimes and one roll of pennies were discovered when Appellant's car was searched. Further investigation in the Gillette area disclosed the whereabouts of most of the missing furniture, stereo equipment, and other items. However, no large amounts of cash or coins were ever recovered.

At the trial, the State presented several witnesses who testified that Appellant had sold or pawned the property which the landlady had entrusted to him. Witnesses also testified that Appellant indicated he was selling the items because he needed money so that he could return to Minnesota.

After presenting that portion of its case dealing with Appellant's disposal of the personal property and the charge of larce-

ny by bailee, the State turned to the Kwik Shop larceny. The State called as its primary witness the Kwik Shop clerk who had been alone on duty between five and ten o'clock on the evening of June 15, 1989. The clerk gave the following accounting of the evening. Appellant, who was also her former boyfriend, visited the store four times during the clerk's shift. The first two visits were brief and consisted of Appellant asking the clerk about her after-work plans. During Appellant's third and fourth visits, however, he went behind the check-out counter and sat in a chair reserved for store employees. According to the clerk, someone sitting in the chair would be able to see the store's open safe. The clerk repeatedly asked Appellant not to sit behind the counter.

During Appellant's fourth visit to the Kwik Shop (from approximately nine to nine-thirty), the clerk spent roughly three to five minutes rearranging boxes of merchandise in the storeroom at the rear of the store. For a portion of that time, Appellant assisted the clerk with moving the boxes. However, before the clerk had finished her duties in the storeroom, Appellant returned by himself to the front of the store. Evidence demonstrated that it was impossible to see the check-out counter and safe from the storeroom. The clerk said she was certain that she and Appellant were the only two people in the store during this period. She also testified, however, that she would not have been able to hear if someone else had entered or left the store during the three- to five-minute period she was in the storeroom.

When the clerk returned to the front of the store, she observed Appellant standing by the front door. Appellant indicated that he would return at ten o'clock to pick her up, and he then left "in a rush." The clerk did not observe Appellant carrying anything when he left. Appellant did not return.

The State also presented testimony to the effect that the four rolls of coins which were in Appellant's possession at the time of his arrest could have been wrapped by a coin machine at the First Interstate Bank

in Gillette. The Kwik Shop had obtained rolled coins from that bank. In addition, a bank employee testified that the bank provided rolled coins to between thirty and forty other businesses in Gillette. On cross-examination, none of the State's witnesses could confirm that the rolled coins which were in Appellant's possession had, in fact, been taken from the Kwik Shop safe.

After the State rested its case, Appellant's trial counsel called, as its sole witness, the investigating officer who had previously been called by the State. The officer testified it was his understanding that when Appellant was arrested in Minnesota he did not possess any money other than the three rolls of dimes and one roll of pennies. Appellant did not testify, and his counsel did not present any other evidence in his defense.

The jury found Appellant guilty on both charges of felony larceny of the Kwik Shop and felony larceny by bailee of the furniture and household items. Appellant was sentenced to two consecutive sentences of thirty-six to sixty months each and ordered to pay restitution of $3,140.21. Appellant appeals only the Kwik Shop felony larceny conviction.

Appellant's first issue is dispositive, and, therefore, we will not address the issue of joinder.

Our standard of review for a sufficiency of the evidence claim is set forth in *Broom v. State*, 695 P.2d 640, 642 (Wyo.1985) (quoting *Harvey v. State*, 596 P.2d 1386, 1387 (Wyo.1979)):

"[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State."

Wyo.Stat. § 6–3–402 (1988) provides in pertinent part:

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

＊　　＊　　＊　　＊　　＊　　＊

(c) Except as provided by subsection (e) of this section, larceny is:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more ＊ ＊ ＊[.]

"One accused of a crime is presumed to be innocent until proven guilty beyond a reasonable doubt, and this presumption applies to every element of the crime charged." *Stuebgen v. State*, 548 P.2d 870, 879 (Wyo. 1976).

The State presented uncontested evidence that the amount of money taken in the Kwik Shop larceny exceeded $500 and that the crime occurred in Campbell County between approximately nine o'clock and midnight on the evening of June 15, 1989. The only issue to be resolved was whether the State proved beyond a reasonable doubt that Appellant did steal, take, or carry away the money from the Kwik Shop safe with the intent to deprive the owner of possession.

In *Mendicoa v. State*, 771 P.2d 1240, 1243 (Wyo.1989) (quoting *Murdock v. State*, 351 P.2d 674, 678 (Wyo.1960)), we stated that, "in order to support a conviction, 'there must be a definite showing that defendant performed some act of taking, an asportation, or that he caused or procured [an accomplice] to perform such act.' " *See Jennings v. State*, 806 P.2d 1299 (Wyo.1991). We have also said, "Many times proof of identification can be one of the most difficult hurdles the prosecution must overcome." *Wells v. State*, 613 P.2d 201, 203 (Wyo.1980).

No direct evidence was offered to demonstrate that Appellant actually took the money bags from the Kwik Shop safe. There were no eyewitnesses to the crime, and Appellant was not observed carrying anything when he left the store. The State could not prove that the four rolls of coins in Appellant's possession at the time of his

arrest actually came from the Kwik Shop safe. At best, the rolls of coins were merely shown to be *similar* to other rolls of coins used in the store. Rolled coins are readily obtainable, are not unique, are not readily distinguishable from other rolled coins, and are relatively common. Several Kwik Shop employees testified that they had accepted rolled coins in payment for purchased merchandise and had also given out rolled coins to store customers upon requests for change. Also, no evidence was presented to indicate that the stolen money bags contained rolls of dimes or pennies.

Without direct evidence to prove that Appellant committed the Kwik Shop larceny, the State relied upon circumstantial evidence to prove guilt. In *Wells*, we said that circumstantial evidence "has the same qualities of persuasion accorded direct evidence." *Id.* at 202. In that case, which involved a stolen truck, this Court affirmed a larceny conviction challenged on the basis of insufficient evidence. We stated:

> It is true, according to the evidence * * * that the defendant did have the opportunity to commit the crime charged and there is no doubt about it. * * * Opportunity to commit the crime, which when linked with other incriminating facts, may establish the guilt of the defendant.

*Id.* at 203.

The State specifies considerable circumstantial evidence as proof of Appellant's guilt. It is undisputed that Appellant was in a position where he could have seen the open safe and that he had an opportunity to take the money bags from the safe. Appellant made a hurried exodus from the store and failed to return to pick up the clerk. He left Gillette and drove to Minnesota around the time the money disappeared. He had expressed a need for money and had committed a separate, contemporaneous larceny to raise money for his trip. Appellant was arrested while he was in possession of four rolls of coins which were similar to rolled coins provided by the

bank at which the Kwik Shop did its banking.

The State's primary argument is that Appellant was the *only* person who could have taken the money. While the clerk expressed her opinion that she thought Appellant took the money bags, she also testified that it was entirely possible during the period of time she was in the storeroom for someone other than Appellant to have entered the store without her knowledge. It follows that, if someone else could have entered the store during this period, that person could also have taken the money bags. Thus, the State's contention that Appellant was the *only* person who could have committed this crime is not supported by the evidence.

This case is similar in some respects to *Wells* since the defendant in each case was not in possession of readily identifiable stolen property when he was arrested. However, both the facts and the result in *Wells* are distinguishable from this case in part because the stolen truck in *Wells* contained the defendant's belongings. This, and other corroborating evidence, established a strong nexus between the defendant and the crime. *See Jennings*, 806 P.2d 1299. The same nexus of corroborating evidence which was present in *Wells* is nonexistent in the present case.

The State was unable to prove that the rolled coins in Appellant's possession actually came from the Kwik Shop larceny. It relied heavily, however, upon the fact that Appellant had the opportunity to commit the crime. Opportunity alone is insufficient to support a conviction. *Jozen v. State*, 746 P.2d 1279 (Wyo.1987). *See also King v. State*, 718 P.2d 452 (Wyo.1986). Appellant's opportunity to commit the crime and the other incriminating evidence presented do not provide an adequate link between Appellant and the Kwik Shop larceny.

We hold that the evidence presented by the State was insufficient to form a reasonable inference of Appellant's guilt beyond a reasonable doubt. Therefore, we reverse Appellant's Kwik Shop larceny conviction.

 

Also, because it appears from the record that the amount of restitution ordered in this case is inconsistent with our resolution of this appeal, we remand this case to the district court for recalculation of the amount of restitution in conformity with this opinion. *See Renfro v. State,* 785 P.2d 491 (Wyo.1990).

Reversed and remanded.