2003 WY 44

**Travis Lee CURETON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 02–52.**

Supreme Court of Wyoming.

March 31, 2003.

Kenneth Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Assistant Appellate Counsel; Jason M. Tangeman, Interim Director, Wyoming Defender Aid Program; Lindsay A. Hoyt, Student Director; and Douglas Stevens, Student Intern., Representing Appellant. Argument by Mr. Stevens.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Hugh Kenny, Senior Assistant Attorney General, Representing Appellee. Argument by Mr. Kenny.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶1] After trial, a jury convicted appellant Travis Cureton of burglary. Appellant appeals the judgment and sentence imposed upon his conviction claiming only that insufficient evidence was presented to the jury to sustain his conviction for burglary. Upon our review, we find sufficient evidence and, therefore, affirm.

### FACTS

[¶2] At approximately 8:00 p.m. on Saturday, May 5, 2001, a bartender at the American Legion in Sheridan, Wyoming observed appellant in front of the safe holding a bank bag. Upon being noticed, appellant immediately fled the premises and headed in a northerly direction. About four hours later, Michelle Baldwin arrived at her Sheridan residence located north of the American Legion to find the door open and a half eaten piece of pizza on the floor. Because Ms. Baldwin believed someone had illegally entered her home and her husband was at work, she summoned the police. The police responded to the call and searched the house but found no one. The police then left without collecting any evidence but asked Ms. Baldwin to search her home to see if anything was missing. Later, Ms. Baldwin reported that various items were missing from her home.

[¶3] On Monday, May 7, 2001, Lieutenant Glen Wright began looking for appellant as a suspect in the American Legion incident, as appellant had been identified by the bartender in a photo lineup. While looking for appellant, Lt. Wright spotted a white automobile in which he believed appellant was a passenger. Upon stopping the vehicle, appellant was positively identified. However, when officers tried to take appellant into custody, appellant ran. Shortly thereafter, appellant was caught and arrested. When he was advised that he was being arrested for his participation in the American Legion incident, he denied any knowledge of this event.

[¶4] After the arrest, Lt. Wright took appellant back to the vehicle so appellant could gather his possessions from the automobile. Appellant identified that certain items were his, and both he and these possessions were transported to the detention center. Later, the driver of the vehicle in which appellant was riding when arrested contacted the police and asked if he could view the property taken when appellant was arrested to ensure that the police had not taken any of the driver's property. When this person viewed the property, he indicated that two bottles of shampoo, some change, and a CD belonged to him. The police noticed that some of the remaining property matched the description of the Baldwins' missing property. The Baldwins subsequently identified that four shirts, a sweatshirt, a DVD case, three Play Station games, a flashlight, a black case with a Play Station II, and a hand held tape recorder in appellant's possession belonged to them.

[¶5] Appellant was charged with petit larceny with respect to the American Legion incident and burglary stemming from what had occurred at the Baldwin residence. Ini-

tially, appellant pled not guilty to both charges. However, appellant subsequently pled guilty to the petit larceny charge regarding the American Legion incident. Appellant was convicted of the burglary charge concerning the Baldwin home following a trial by jury.

## STANDARD OF REVIEW

 [¶ 6] The standard of review for sufficiency of the evidence claims is well established. We must assess whether all the evidence, when viewed in a light most favorable to the State, is adequate to form the basis for an inference of guilt beyond a reasonable doubt drawn by the finder of fact. We do not consider the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and we afford the successful party's evidence every favorable inference which may be reasonably and fairly drawn from that evidence. Even though it is possible to draw other inferences from the evidence presented, it is the jury which has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result the jury actually did. *Black v. State,* 2002 WY 72, ¶ 4, 46 P.3d 298, ¶ 4 (Wyo., 2002); *Vanvorst v. State,* 1 P.3d 1223, 1228 (Wyo.2000); *Harris v. State,* 933 P.2d 1114, 1123 (Wyo.1997); *Blake v. State,* 933 P.2d 474, 480 (Wyo.1997).

## DISCUSSION

 [¶ 7] Appellant contends the evidence is insufficient to convict him of burglary. He argues that he was never placed at or near the scene of the crime, that he never fled the scene because he never left Sheridan, and that he made no effort to hide from law enforcement authorities because he was driving around with his friend when he was apprehended. He also asserts there was no evidence of forced entry into the Baldwin residence and no fingerprints or other evidence were found in that residence identifying him. He posits that he was never seen near the Baldwin residence, he did not live

near this residence, and he had never visited this residence. Appellant contends, therefore, that no evidence was presented connecting him directly to the Baldwin home, as no "slightly corroborative" evidence was introduced.

[¶ 8] Appellant further asserts that his possession of property stolen from the Baldwin residence is insufficient, in and of itself, to support his conviction. He argues that the items were found in his friend's car, not his car, and he only identified the stolen property as his because he had recently been maced by the police and was under pressure of the watchful eye of the police when he identified this property. He also contends that his flight from the officers at the time he was stopped was not indicative of guilt because his flight was in response to his involvement in the American Legion incident and not the Baldwin burglary. He claims the fact that the Baldwin residence was north of the American Legion and in the same direction in which he fled does not satisfy adequate "proximity" evidence.

[¶ 9] Finally, appellant argues that the State failed to show any nexus between the American Legion incident and the Baldwin burglary. Appellant claims the American Legion incident is dissimilar from the Baldwin residence incident because the former situation was an attempt to steal money, while particular property items were taken from the Baldwin residence. Appellant asserts that the State's entire case is based on appellant's involvement in the American Legion incident on the same night as the Baldwin residence burglary. Nevertheless, there was not a sufficient nexus between these two crimes to link appellant to both crimes.

[¶ 10] Viewing the evidence in a light most favorable to the State under the applicable standard of review, rather than from the viewpoint most advantageous to appellant as urged by appellant, we conclude that sufficient evidence existed to support appellant's conviction for the crime of burglary.

 [¶ 11] Upon being confronted by Officer Hill and told he was under arrest *without any further explanation,* appellant struggled free and ran in an attempt to avoid

arrest. We have held that flight is admissible as evidence of guilt and is admissible as tending to show consciousness of guilt. *Baier v. State,* 891 P.2d 754, 760 (Wyo.1995); *Gentry v. State,* 806 P.2d 1269, 1275 (Wyo. 1991); *Smizer v. State,* 752 P.2d 406, 411 (Wyo.1988); *Jones v. State,* 568 P.2d 837, 845 n. 10 (Wyo.1977). Flight by itself is not sufficient to establish guilt, but it may be considered together with other factors as tending to show a consciousness of guilt. *Miller v. State,* 830 P.2d 419, 427 (Wyo.1992) (citing *Jones v. State,* 568 P.2d at 845 n. 10).

[¶ 12] Although appellant tries to dismiss his flight as pertaining only to his admitted actions at the American Legion, there remains a competing inference that his flight may have been in response to his fear of being arrested for the Baldwin residence burglary. The State is not required to prove the purpose of appellant's flight. Rather, it is up to the jury to fairly draw reasonable inferences as to the purpose of appellant's actions. Even though it is possible to draw other inferences from the evidence presented, the jury has the responsibility to resolve conflicts in the evidence. This court will not substitute its judgment for that of the jury. *Henderson v. State,* 976 P.2d 203, 208 (Wyo. 1999) (citing *Sutherland v. State,* 944 P.2d 1157, 1160–61 (Wyo.1997)). Simply stated, the jury was free to consider appellant's flight as showing consciousness of guilt for the Baldwin burglary.

[¶ 13] Furthermore, the jury was presented with appellant's possession of the Baldwin property and appellant, himself, claimed ownership of this property. After a brief chase, appellant was apprehended and arrested and advised that he was being arrested for his participation in the American Legion incident. Appellant denied any knowledge of this event. Subsequently, Lt. Wright took appellant back to the vehicle so appellant could gather his possessions from the automobile. Appellant identified that certain items, including those items that were later identified as property of the Baldwins, were his and both he and these possessions were transported to the detention center.

[¶ 14] In particular, on some occasions, appellant personally pointed out the item as being his possession whereupon the officer would hold it out for confirmation again by appellant before it was placed in a separate pile for items identified as appellant's property. On other occasions, appellant personally grabbed items which he stated belonged to him. Still, with smaller items, the police officers went through each item with appellant whereupon he would identify it as his possession or not. For instance, this process was utilized with respect to DVD discs. Eventually appellant identified every item that was removed from the vehicle as his property.

[¶ 15] Explicit declaration of ownership qualifies as corroboration and is an explanation which the jury could find to be false. *Downs v. State,* 581 P.2d 610, 616 (Wyo.1978); *Newell v. State,* 548 P.2d 8, 14 (Wyo.1976). Further,

[w]e have stated that the possession of stolen goods alone is not sufficient evidence to convict for burglary.... However, we have also concluded with regard to burglary that, " '[t]he most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required'" to convict. *Sutherland v. State,* 944 P.2d 1157, 1161 (Wyo. 1997) (quoting *Newell,* 548 P.2d at 13).

*McGarvey v. State,* 2002 WY 149, ¶ 14, 55 P.3d 703, ¶ 14 (Wyo.2002).

[¶ 16] Similar to the circumstances that existed in the *McGarvey* case wherein McGarvey was found to be in possession of the stolen items approximately sixteen hours after the burglary occurred, appellant was found to be in possession of stolen items taken from the Baldwin residence just a few days previously. A defendant's dealing with the property as his own in proximate time to a theft is a corroborating circumstance of burglary. *McGarvey,* at ¶ 15. *See also Downs v. State,* 581 P.2d at 616.

[¶ 17] Likewise, the trial evidence showed that appellant was in proximity to the bur-

glarized Baldwin home around the time that the burglary occurred. As noted above, the American Legion incident occurred at approximately 8:00 p.m. on Saturday, May 5, 2001, just hours before the Baldwin burglary was discovered. Upon his discovery within the American Legion, appellant fled this premises in a northerly direction. The Baldwin home is located north of the American Legion.

 [¶ 18] This evidence established that appellant was in proximity to the Baldwin home both in time and space. A defendant's presence in the neighborhood of a burglary is an important circumstance that is not to be treated merely as coincidence. Placing a defendant in the area of the scene of the crime, coupled with his possession of the victim's property, is sufficient to sustain a conviction. Because appellant was in proximity of the burglary, he had the opportunity to commit the crime. "Evidence of opportunity to commit the crime is a link which considered with other incriminating facts may establish the guilt of the defendant." *McGarvey,* at ¶ 16 (quoting *Downs v. State,* 581 P.2d at 616).

[¶ 19] In addition, appellant's credibility was placed before the jury. As noted previously, upon his being advised that he was being arrested concerning the American Legion incident, appellant denied any knowledge of this event. Yet, appellant eventually pled guilty to petit larceny stemming from the American Legion incident. Of course, appellant was also positively identified as taking part in the American Legion incident.

[¶ 20] Finally, the record clearly establishes that the jury knew that it needed to find corroborative evidence to convict because it sent a note to the court during deliberations asking what comprised "slight corroborative evidence" and requested examples and clarification. The trial court properly responded to the jury's inquiry by indicating that these were questions that the jury must decide on its own. Upon deliberating further, the jury determined that sufficient evidence existed to satisfy it of appellant's guilt of the alleged crime of burglary and issued a guilty verdict. Moreover, review of the record evidences that appellant's counsel made the very same arguments as are now presented before this court on appeal. Nevertheless, the jury rejected these arguments.

[¶ 21] We hold that adequate evidence existed in this case for the jury to form the basis of an inference of guilt beyond a reasonable doubt when such evidence is viewed in the light most favorable to the State as required. As stated previously, we will not substitute our judgment for that of the jury; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Black v. State,* at ¶ 4; *Vanvorst v. State,* 1 P.3d at 1228. *See also Blake v. State,* 933 P.2d at 480 and *Harris v. State,* 933 P.2d at 1123. We determine that a quorum of reasonable individuals could have come to the same result reached by the jury in this case.

### CONCLUSION

[¶ 22] For the foregoing reasons, appellant's conviction for burglary is affirmed.