# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 73

### APRIL TERM, A.D. 2014

### June 10, 2014

MIRANDA ROSE MRAZ,

Appellant
(Defendant),

v.

S-13-0169

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sheridan County*
**The Honorable William J. Edelman, Judge**

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel.  Argument by Mr. Alden.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General.  Argument by Ms. Young.

*Before KITE, C.J., and HILL, BURKE, DAVIS, and FOX, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1] A jury found Miranda Rose Mraz guilty of larceny by bailee. She appeals her conviction claiming the district court erred in excluding alternate suspect evidence and giving an improper jury instruction. She also claims the evidence presented at trial was insufficient to support the conviction. We conclude the evidence was insufficient to support a guilty verdict; we, therefore, reverse the conviction.

**ISSUE**

[¶2] The dispositive issue is whether sufficient evidence was presented to support the jury's verdict.

**FACTS**

[¶3] In July of 2012, the Sheridan County attorney's office charged Ms. Mraz with one count of larceny by bailee in violation of Wyo. Stat. Ann. § 6-3-402(b) and (c)(i) (LexisNexis 2011). The affidavit attached to the charging document stated that Ms. Mraz called 911 at approximately 11:00 a.m. on April 21, 2012, and reported she was opening the Eagles Club in Sheridan where she worked as a bartender when someone robbed the bar and attempted to cut her face. When police arrived at the scene, Ms. Mraz told them she had arrived at the Eagles Club around 10:45 that morning to work, unlocked the back door, entered the building and used her access code to shut off the alarm system when someone came from behind and pushed her head against the wall. She said she did not see the person but thought he or she likely went out the door. Ms. Mraz reported that she went downstairs and saw a light on in the back room where the safe was located. She found the safe door open and called her boss and 911. Police observed scratches across Ms. Mraz's chin and the right side of her jaw. Money bags, cash register tills and a petty cash box were missing from the safe.

[¶4] Later, when detectives examined the alarm system activity records, they learned that Ms. Mraz's access code had been used to turn the system off at 10:40 a.m., on at 10:43 a.m. and off again at 10:55 a.m. just before the alleged assault. The detectives also examined surveillance video and saw Ms. Mraz's vehicle traveling from the direction of her home toward the Eagles Club shortly before her access code was used the first time, driving back toward her home a few minutes later and then returning in the direction of the Eagles Club shortly before her access code was used the second time. When confronted with the evidence from the alarm system and surveillance video, Ms. Mraz told the detective that she had been honest and did not take the money. Police arrested Ms. Mraz. Later, in a recorded telephone conversation from jail, Ms. Mraz told her boyfriend she had forgotten to tell police she had been at the Eagles Club earlier, left to

1

go home to change her tampon and then returned to work when she was assaulted. The items taken from the safe were never found.

[¶5] Prior to trial, the State filed a motion asking the district court to preclude Ms. Mraz from introducing "alternate perpetrator" evidence unless she first established a direct nexus between another person and the crime. The district court heard argument on the motion at the pretrial conference and took the matter under advisement. The case proceeded to trial.

[¶6] The State attempted to show that the night before the theft, the bartender on duty placed money bags, tills and the petty cash box in the safe, locked it and turned the alarm system on before leaving for the night. The next person known to be in the building was the custodian who arrived the next morning and turned the alarm system off while he worked. He testified he did not know the combination to the safe and it was locked when he left between 9:00 and 9:45 a.m. The State asserted Ms. Mraz was the only person known to be in the building on the morning of the theft who had keys to the building, an access code to turn off the alarm system and the combination to the safe. The State showed that the alarm system included a motion sensor which, it asserted, would have detected any motion near the safe when the alarm system was on. Because it detected no motion during the night or after the custodian turned the alarm system back on before leaving the building, the State asserted the theft could only have occurred when Ms. Mraz arrived and turned the alarm system off, meaning it occurred after she entered her access code at 10:40 a.m. The State contended Ms. Mraz lied when she did not tell police she had been in the building then.

[¶7] Ms. Mraz's theory of defense was that law enforcement made a "rush to judgment" by deciding she had taken the money from the safe without properly investigating other possibilities. Defense counsel presented evidence that other employees of the Eagles Club had keys to the back door and access codes to shut off the alarm system. He also showed that other employees knew the safe combination and it had not been changed even after the Eagles Club fired one employee. The defense presented evidence that the bartender on duty the night before noticed some unusual phenomena when she was closing after everyone else had gone, including noises upstairs. The defense also showed the alarm system was turned off for two hours the next morning while the custodian was working. Part of that time, he was at the other end of the bar from where the safe was located running a vacuum cleaner and could not have heard if someone entered or was in the building. The defense also presented evidence that the motion sensor did not work if an item, such as a hat, was placed over it. Defense counsel showed that a service door to the building was not connected to the alarm system and could be opened from the outside with a coin. The defense contended law enforcement never investigated these possibilities but instead jumped to the conclusion that Ms. Mraz had taken the money. The defense also asserted Ms. Mraz did not lie to police; rather, she forgot to tell them she had arrived at work earlier, left to go home and had just returned when the assault occurred.

[¶8]  On the second day of trial, the State called the bartender who worked the last shift the night before Ms. Mraz discovered the open safe.  During cross-examination, defense counsel asked the witness whether she noticed anything that concerned her when she was closing after everyone else had left.  The State objected and asked to approach the bench.  The bench conference was not recorded;[1] however, the witness was thereafter allowed to testify that as she was closing she heard a noise coming from upstairs that scared her and she noticed that someone had closed a closet door that was usually left open so employees could see inside the closet.  The witness was not allowed to testify that she spoke to police the next morning about the noise and the closet or her suspicion that someone may have been hiding in the building that night.[2]   She also was not allowed to testify that a small door into the coal room was always unlocked.

---

[1] Throughout the trial, numerous conferences were held outside the presence of the jury and were not reported. W.R.Cr.P. 55 states:

> (a) In the district court, the court reporter shall report all testimony and all proceedings held in open court including but not limited to voir dire, opening statements, motions and final arguments, as well as conferences with the presiding judge in open court and in chambers.  Informal discussions, informal instruction conferences and pre-trial conferences shall be reported when requested by a party.

The rule clearly contemplates that in district court "conferences with the presiding judge in open court" shall be reported.  The term "open court" means "a court that is in session, presided over by a judge, attended by the parties and their attorneys, and engaged in judicial business." *Black's Law Dictionary* 9th Ed. 1199 (2009).

W.R.A.P. 3.02 also reflects that our rules intend bench conferences in district court to be reported:

> (a) Transcripts in criminal and juvenile matters shall consist of all proceedings including, but not limited to, voir dire, opening statements and final arguments, conferences with the presiding judge, in addition to the testimony of the case and other essential materials.  (Emphasis added.)

A criminal defendant is entitled to have his entire trial recorded and available for appeal. *Reynolds v. State*, 2012 WY 120, ¶ 13, 284 P.3d 823, 826 (Wyo. 2012).  Many of the bench conferences in this case were not reported as required.  Ms. Mraz has not asserted the lack of compliance as an issue before this Court and we do not address it further except to reiterate that reporting is required and a complete record is necessary for this Court to provide meaningful review.

[2] In response to a question by defense counsel, the witness said, "[W]hen I got there the next morning … I immediately approached Detective Brastrap and said --."  The prosecutor objected, stating, "This is not a response – she's talking about what she said and not what she did."  The Court sustained the objection.

Shortly thereafter, defense counsel asked the same witness about an interview she had with detectives later that week.  Defense counsel asked:  "[W]hat was the subject of that interview?"  The prosecutor objected on hearsay grounds.  The district court asked whether the witness was going to testify about statements made to her by others.  Defense counsel said she was not.  The prosecutor asserted it was still hearsay if what the witness said to the detective was offered for its truth.  Defense counsel asked to approach the bench and the record reflects "a discussion was held off the record at the bench." Because it was not reported, we do not know what was said.  The district court then excused the jury and the prosecutor objected to the witness speculating that someone may have been in the building as she was closing the night before because it was "alternate suspect" evidence, not relevant, too remote and hearsay.  Ultimately, the district court sustained the objection and prohibited the witness from testifying that she was concerned someone may have been in the building unless the defense presented evidence establishing "the possibility of a third, of an unknown person in the Eagles Lodge."

3

[¶9] After three and a half days of trial, the jury returned a verdict finding Ms. Mraz guilty. The district court entered judgment on the verdict and sentenced Ms. Mraz to two to eight years imprisonment, suspended the sentence and placed her on supervised probation for eight years. Ms. Mraz timely appealed from the judgment and sentence.

## DISCUSSION

[¶10] We begin our discussion by considering the sufficiency of the evidence because a finding that the evidence was insufficient to support the conviction would require remand to the district court for entry of an acquittal. *Ken v. State*, 2011 WY 167, ¶ 17, 267 P.3d 567, 572 (Wyo. 2011). Our review is governed by the following standards:

> [W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt.

*Id.*, ¶ 19, 267 P.2d at 572, quoting *Daves v. State*, 2011 WY 47, ¶ 30, 249 P.3d 250, 259 (Wyo. 2011).

[¶11] The statute under which Ms. Mraz was charged provided as follows:

### § 6-3-402. Larceny; . . . penalties.

---

The testimony defense counsel sought to elicit from the witness involved her direct experiences and concerns as she was working alone in the building on the night before the theft and was not hearsay, irrelevant, remote or speculative. Although the witness was allowed to testify about what she saw and heard, she was not allowed to testify that she was worried someone may have been in the building nor was she allowed to testify that the door to the coal chute was always unlatched. This testimony appears to have been excluded as "alternate suspect" evidence.

Alternate suspect evidence is evidence intended to show that a crime was committed by a particular, identified individual or individuals other than the defendant. *Grady v. State*, 2008 WY 144, ¶14, 197 P.3d 722, 728 (Wyo. 2008); *Bush v. State,* 2008 WY 108, ¶ 68, 193 P.3d 203, 220 (Wyo.2008). In *Bush*, for example, the defendant wanted to present testimony from several witnesses to suggest that his brother committed the crime. We held the statements were properly excluded either because they were too speculative or were hearsay. We did not hold they were properly excluded as "alternate suspect evidence." There is no such category of inadmissible evidence. Evidence that someone else may have committed the crime charged is perfectly admissible as long as it is relevant, not unfairly prejudicial, not hearsay and satisfies the other rules of evidence. The language in *Bush* to the effect that there must be a direct nexus between the suspect and the crime simply means speculative evidence is not sufficient. Applying these rules, Ms. Mraz was entitled to present relevant, probative, otherwise admissible evidence supporting her theory of the case that the opportunity existed for someone else to enter the building and take the money.

. . . .

(b) A bailee, a public servant as defined by W.S. 6-5-101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

(c) . . . larceny is:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more; ...[3]

[¶12] The material elements of larceny by a bailee are that the defendant has custody or possession of the property with consent and, while in possession, the defendant converts the property to his own or another's use. *Powell v. State*, 2012 WY 106, ¶ 8, 282 P.3d 163, 165 (Wyo. 2012). Unlike other crimes involving theft, larceny by bailee does not require a trespassory taking; instead, it requires unlawful conversion of property by a person having rightful possession of it. *Id.*, ¶ 10, 282 P.3d at 166.

[¶13] It was undisputed that Ms. Mraz was entrusted with the combination to the safe in connection with her duties as a bartender for the Eagles Club. It was also undisputed that on the morning in question one of Ms. Mraz's duties was to count the money in the safe. The State also presented evidence showing that Ms. Mraz's security code was entered at 10:40 a.m. to turn the building alarm system off, entered again at 10:43 to turn the system back on, and entered again at 10:55 to turn the system off just before the alleged assault. Additionally, the State presented evidence of the surveillance videos showing Ms. Mraz's car coming and going in the direction of the Eagles Club at about 10:38 and again at 10:53. Finally, it was undisputed that Ms. Mraz did not tell police during the interviews that she had gone to the Eagles Club, entered the building and turned off the alarm system earlier that morning.

---

[3] The statute was amended in 2013 and now provides in relevant part as follows:

**§ 6-3-402. Theft; penalties.**

(a) A person is guilty of theft if he knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of depriving the other person of the property.

(b) Repealed by Laws 2013, ch. 191, § 2.

(c) Theft is:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more;

[¶14]   There was no direct evidence that Ms. Mraz took the money from the safe.   The State's evidence showed only that Ms. Mraz had the opportunity to take it in the three minutes between turning the security system off at 10:40 and back on at 10:43.   In addition, the State relied on circumstantial evidence showing that Ms. Mraz did not tell police she had been in the building earlier despite the surveillance videos and alarm system activity records showing her vehicle coming and going in that direction and the entry of her security code.   The question is whether the evidence that Ms. Mraz had the opportunity to take the money together with the evidence that she did not tell police she had been in the building earlier is sufficient under Wyoming law to support the verdict.

[¶15]   Long ago, in *State v. Morris*, 41 Wyo. 128, 283 P. 406, 414 (1929), this Court stated that "opportunity, alone, is not sufficient to justify a conviction even though [a defendant is] unable to show who did commit it.   The burden still rests upon the prosecution to show, beyond a reasonable doubt, that the crime was actually committed by [the defendant] and not by some other person."   Since *Morris*, the Court has reiterated the principle that opportunity alone is insufficient to support a conviction.   *Jozen v. State*, 746 P.2d 1279, 1283 (Wyo. 1987); *Smizer v. State*, 752 P.2d 406, 411 (Wyo. 1988); *Fischer v. State*, 811 P.2d 5, 8 (Wyo. 1991).   However, the Court has also said that evidence of opportunity to commit the act is a link, which considered in connection with other incriminating facts, may prove circumstantially that an accused did commit the crime.   *Downs v. State*, 581 P.2d 610, 616 (Wyo. 1978); *Wells v. State*, 613 P.2d 201, 203 (Wyo. 1980); *Jacobs v. State*, 641 P.2d 197, 198-99 (Wyo. 1982); *King v. State*, 718 P.2d 452, 453 (Wyo. 1986); *Cowell v. State*, 719 P.2d 211, 214 (Wyo. 1986); *Jozen*, 746 P.2d at 1283; *McGarvey v. State*, 2002 WY 149, ¶ 16, 55 P.3d 703, 706 (Wyo. 2002); *Cureton v. State*, 2003 WY 44, ¶ 18, 65 P.3d 1250, 1254 (Wyo. 2003); *Brown v. State*, 2004 WY 57, ¶ 14, 90 P.3d 98, 103 (Wyo. 2004).

[¶16]   Examining the cases in which this Court has applied these rules, it is apparent that in every case involving opportunity evidence in which this Court has concluded sufficient evidence was presented to support the verdict, there has also been evidence that the defendant was found in possession of the stolen property, had a motive to commit the crime, attempted to avoid apprehension, or was directly linked to the crime. In *State v. Wenger*, 47 Wyo. 401, 38 P.2d 339 (1934), for example, the defendant was convicted of arson after a fire destroyed a barn on property he was charged with caretaking.   Although no one saw the defendant start the fire, this Court upheld the conviction based on evidence that he had the opportunity to start it, he had ill will toward the owner and he had threatened to "burn [the owner] out."   Considering the evidence in its entirety, the Court said, "It shows … not only the opportunity to commit the crime, but also a motive and a disposition to commit it."   *Id*., 38 P.2d at 344.[4]

---

[4] In *Wenger*, the defendant also claimed error in the district court's failure to instruct the jury that opportunity to commit a crime is not sufficient to justify a conviction.   Although we found no error because defense counsel had not requested the instruction and the other instructions adequately apprised the jury of the applicable law, we quoted with approval the following from a Missouri case: "Instructions

6

[¶17]   In *Newell v. State*, 548 P.2d 8, 13 (Wyo. 1976), the defendant appealed his burglary conviction, claiming the evidence was insufficient because although it clearly showed an intentional, nonconsensual entry into the drugstore and the theft of a gun and drugs, there was no direct evidence identifying him as the perpetrator.   This Court concluded the evidence was sufficient because it showed the defendant had possession of the stolen items when he was arrested, had been in the vicinity of the drugstore looking for drugs on the night of the burglary, left the city suddenly in the early morning hours shortly after the burglary and provided an implausible explanation as to how he came to possess the stolen property.  *Id.,* 548 P.2d at 13-14.   Possession of the stolen property was, the Court said, "the most significant and material evidence of the defendant's guilt," meaning "only slight corroboration" was required.  *Id.*, 528 P.2d at 13.   Evidence of motive, opportunity and flight provided the corroboration.  *Id.*, 528 P.2d at 14.

[¶18]   Other sufficiency of the evidence cases decided by this Court confirm that opportunity evidence must be accompanied by evidence that the defendant possessed the stolen property, attempted to avoid apprehension by law enforcement, or was identified in some way as having possessed the stolen property.  In *Downs*, 581 P.2d at 615-616, the Court upheld a burglary conviction based upon evidence that the stolen property was in the defendant's possession and he was seen in the immediate vicinity of the burglarized building a day or so before.  The Court upheld a larceny conviction in *Wells,* 613 P.2d at 203, where the defendant had been in the stolen truck, the keys were in the truck, the truck disappeared and when the truck was found the defendant's backpack was in it.  *See also Jacobs*, 641 P.2d at 198-99 (evidence of opportunity, flight and possession was sufficient for burglary conviction); *Cowell*, 719 P.2d at 214 (possession of stolen property together with opportunity and witness identification of the defendant as having cashed one of the stolen checks was sufficient evidence of burglary); *Jozen*, 746 P.2d at 1283 (defendant's possession of the keys to a burglarized residence and the discovery of his shirt and pieces of stolen property in the van he was driving was sufficient to support the verdict); *Sutherland v. State*, 944 P.2d 1157 (Wyo. 1997) (possession of stolen property, the defendant's recent visit to the home from which the property taken, identification of the defendant as the person who tried to sell the stolen property sufficient to support verdict); *McGarvey*, ¶ 16, 55 P.3d at 706 (possession together with opportunity and witness identification of the defendant as the person who forged the victim's name was sufficient to support burglary conviction); *Cureton,* ¶ 18, 65 P.3d at 1254 (possession together with flight sufficient to support burglary conviction); *Brown*, ¶ 14, 90 P.3d at 103 (conviction upheld where evidence showed opportunity and witness testified that immediately after leaving the jewelry store from which a necklace was taken the

---

of this character have usually been condemned  … as comments upon the evidence." *Wenger*, 38 P.2d at 344, quoting *State v. Rudman*, 327 Mo. 260, 37 S.W.2d 409, 412 (1931).  Because we resolve Ms. Mraz's case on sufficiency of the evidence grounds, we do not address her claim of instructional error.  However, the challenged instruction appears to suffer from the same "comment upon the evidence" infirmity as that in *Wenger*.

defendant showed her a necklace similar to the one stolen and she suspected he had taken it).

[¶19] Clearly, like all of the above cases, evidence was presented in the present case that Ms. Mraz had the opportunity between 10:40 and 10:43 a.m. on April 21, 2012, to take the money from the safe. Unlike the above cases, however, no evidence was presented that Ms. Mraz possessed the stolen property. Therefore, "the most significant and material evidence of … guilt" was lacking and the rule that "only slight corroboration" was required does not apply. Also in contrast to the above cases, there was no evidence Ms. Mraz had ill will toward or had threatened the Eagles Club, its owners or any of its employees or that she attempted to flee law enforcement or suddenly left town after the money was taken. There was also no evidence that Ms. Mraz had a motive to steal from her employer. There was no evidence of any property belonging to her connecting her with the theft, like the defendant's backpack in *Wells*, nor was there evidence showing that someone saw or identified Ms. Mraz as having used the stolen property (*Cowell, McGarvey, Cureton*), attempted to get rid of the stolen property (*Sutherland*) or possessed property similar to it (*Brown)*.

[¶20] Because the evidence showing that Ms. Mraz had the opportunity to take the money was not accompanied by evidence showing she possessed the stolen property, more corroborative evidence was required than her failure to disclose that she had been in the building earlier. The evidence of opportunity to take the money, considered in connection with what she did not tell police, was not sufficient to prove circumstantially that she committed the crime.

[¶21] The cases in which this Court has concluded evidence was insufficient to support a conviction substantiate this conclusion. In *King*, 718 P.2d at 453, the defendant was charged with six burglaries in the Riverton area. After trial, a jury found him guilty of two counts. He claimed the verdict was not supported by sufficient evidence because the only evidence presented at trial was that six burglaries had occurred and some property taken in the burglaries was found at his home. Citing *Newell* and *Downs*, this Court considered whether, in addition to the evidence that stolen items were found at the defendant's home, there was "slight corroborative evidence of inculpatory circumstances connecting him with the burglaries." *King*, 718 P.2d at 453. The Court concluded the evidence that the defendant's home was in the general area of the burglaries and the burglaries were similar was not enough corroborative evidence to support the verdict.

[¶22] In *Fischer v. State*, 811 P.2d 5 (Wyo. 1991), the defendant was arrested and convicted of larceny after two money bags, one containing rolled coins, were taken from a convenience store. The evidence presented at trial showed that the defendant had visited his girlfriend who was working at the store several times during the three hour period when law enforcement determined the money had been taken; was behind the check-out counter twice from where he could have seen the open safe; was in the front of

8

the store by himself while his girlfriend could not see the safe because she was in the storeroom; left in a rush when she returned to the front of the store; said he would pick her up at 10:00 but never returned; left Wyoming and drove to another state around the time of the theft; had expressed a need for money; and at the time of his arrest had in his possession four rolls of coins. *Id.*, 811 P.2d at 6-8. This Court concluded that the defendant's opportunity to commit the crime and the other incriminating evidence did not provide an adequate link between him and the larceny and reversed the conviction.

[¶23] Despite this Court's statements that possession of stolen property is the most significant and material evidence of a defendant's guilt, in *King*, the Court concluded the evidence was not sufficient to support a guilty verdict even though some of the stolen property was found in the defendant's home. Similarly, in *Fischer*, the Court concluded the evidence was insufficient even though the defendant possessed property matching the description of some of the stolen property. Given that possession of stolen property or property of the same type as property that was stolen may not provide an adequate link between a defendant and a theft, we would be hard pressed to conclude that an adequate link is established when there is absolutely no evidence of possession. When combined with the lack of any evidence of motive, attempt to avoid apprehension by law enforcement, ill will, or physical evidence linking Ms. Mraz with the stolen property, the evidence was not sufficient under Wyoming law to support the verdict.

[¶24] Reversed and remanded with instructions to enter a judgment of acquittal.