# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 29

OCTOBER TERM, A.D. 2020

February 12, 2021

NIGEL DOMINIC LATHAM,

Appellant
(Defendant),

v.

S-20-0187

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

*Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.*

*Representing Appellee:*

*Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A jury convicted Nigel Latham of felony attempted interference with a peace officer and misdemeanor child endangerment.  On appeal, Mr. Latham argues that the officer was not engaged in the lawful performance of his official duties because he used excessive force, and the evidence is insufficient to prove he had the specific intent to disarm the officer.  We affirm.

## ISSUES

[¶2]   We rephrase the issues:

> I.      Was the evidence sufficient to demonstrate that the officer was engaged in the lawful performance of his official duties when he subdued Mr. Latham?

> II.      Was the evidence sufficient to support the finding that Mr. Latham had the specific intent to disarm the officer?

## FACTS

[¶3]   Melissa Hughes (formerly known as Melissa Przybylski) and Mr. Latham share a daughter, I.L.  On the day of the incident, Ms. Hughes arrived at Mr. Latham's mother's house to pick up I.L. after her weekend visitation with Mr. Latham.  Ms. Hughes went inside and saw Mr. Latham holding their daughter and drinking from an open bottle of "Krud Killer" (or "Krud Kutter") cleaning solution.  He was unwilling to relinquish I.L. and, instead, charged Ms. Hughes and pinned her to the wall.  She pushed him off and left the house.  Ms. Hughes called the police to request a welfare check on I.L., and Officers Matthew Ryan and Jose Ruiz responded to the call.  When the officers entered the house, Mr. Latham picked up I.L. again and started drinking from the bottle of cleaning solution.  Officer Ruiz became concerned that Mr. Latham was a danger to himself and, not wanting to put I.L. "in harm's way," he persuaded Mr. Latham to go outside.  With I.L. still in his arms, Mr. Latham started jogging toward the street.  Ms. Hughes intercepted him and grabbed I.L.  Mr. Latham then ran back toward the house, and Officer Ruiz tackled him.

[¶4]   Mr. Latham landed on his back, and Officer Ruiz straddled him to gain control and prevent further movement.  Almost immediately, Officer Ruiz felt his gun holster move from the outside of his thigh to the front and, when he looked down, he saw Mr. Latham's hands on his gun.  Officer Ruiz slammed his right hand over his gun and holster, punched Mr. Latham in the face twice with his left hand, and yelled to Officer Ryan, "He's going for my gun.  Watch my gun."  When Mr. Latham did not let go of the gun, Officer Ryan put his hands over Officer Ruiz's gun to secure it, and Officer Ruiz slid his arm around Mr. Latham's throat and applied a "rear naked choke" hold he had

1

learned in his jiu-jitsu class until Mr. Latham lost consciousness. The officers handcuffed Mr. Latham, and he regained consciousness shortly thereafter. Mr. Latham continued to fight so the officers immobilized him with a restraint system, and an ambulance transported Mr. Latham and Officer Ruiz to the hospital.

[¶5]    The State charged Mr. Latham with two counts of interference with a peace officer—one for attempting to disarm and the other for attempting to injure; misdemeanor child endangerment; and unlawful contact—touch.[1]  At trial, Ms. Hughes, Mr. Latham's mother, Officer Ruiz, and Mr. Latham's cousin testified about the incident. Officer Ruiz explained that whenever an officer takes physical action against an individual it is considered a use of force. He testified that there are not guidelines about when to use different types of non-lethal force, rather, the use of force must be justified, and the goal is to use the least amount of force necessary. Officer Ruiz explained that it is considered a deadly-force encounter when a suspect attempts to disarm a police officer, which means that officers can do whatever is necessary to neutralize the subject. He also explained that the Cheyenne Police Department allows officers to use force when a person is deemed a danger to themselves. The jury found Mr. Latham guilty of attempted interference with a peace officer and misdemeanor child endangerment and not guilty of unlawful contact—touch. He appealed the attempted interference with a peace officer conviction.

## STANDARD OF REVIEW

[¶6]    We review a sufficiency of the evidence claim by determining "whether the evidence could reasonably support the jury's verdict." *Armajo v. State*, 2020 WY 153, ¶ 21, 478 P.3d 184, 191 (Wyo. 2020) (quoting *Huckins v. State*, 2020 WY 21, ¶ 10, 457 P.3d 1277, 1279 (Wyo. 2020)).  "We do not reweigh the evidence or reexamine the credibility of the witnesses." *Armajo*, 2020 WY 153, ¶ 21, 478 P.3d at 191.  During our review, "we assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence." *Morones v. State*, 2020 WY 85, ¶ 8, 466 P.3d 300, 303 (Wyo. 2020) (quoting *Gonzalez-Chavarria v. State*, 2019 WY 100, ¶ 22, 449 P.3d 1094, 1099 (Wyo. 2019)).

## DISCUSSION

I.    *The evidence is sufficient to show that Officer Ruiz was engaged in the lawful performance of his official duties when he subdued Mr. Latham*

[¶7]    The State charged Mr. Latham with attempted interference with a peace officer.  It was required to prove that he: 1) intentionally and knowingly; attempted to 2) disarm a

---

[1] The second count of interference was dismissed after a preliminary hearing.

2

peace officer of his firearm; 3) while the peace officer was engaged in the lawful performance of his official duties. Wyo. Stat. Ann. § 6-5-204(c) (LexisNexis 2019); Wyo. Stat. Ann. § 6-1-301(a). Mr. Latham argues that the evidence is insufficient to support his conviction, because Officer Ruiz used excessive force to subdue him. We have held that "[w]hen a peace officer uses excessive force, he is not considered to be engaged in the lawful performance of his official duties." *McEuen v. State*, 2017 WY 15, ¶ 12, 388 P.3d 779, 782-83 (Wyo. 2017) (citing *Yetter v. State*, 987 P.2d 666, 669 (Wyo. 1999)).

[¶8]    Mr. Latham asserts *Tennessee v. Garner* held that it is unconstitutional to use lethal force against an unarmed, nonviolent, fleeing suspect and argues that he was unarmed, nonviolent, and running away when Officer Ruiz tackled him. 471 U.S. 1, 10-11, 105 S.Ct. 1694, 1700-01, 85 L.Ed.2d 1 (1985). Mr. Latham conflates three separate uses of force—the tackle, the punches, and the choke hold—into one. However, the force used to subdue him when he attempted to flee the scene, the tackle, was non-lethal. Thus, *Garner* does not apply. We look at each use of force separately.

## A.    The Tackle

[¶9]    Mr. Latham argues that Officer Ruiz's actions were unreasonable because the purpose of the original welfare check was completed when I.L. was safely with Ms. Hughes. In response, the State asserts that Officer Ruiz's actions prevented Mr. Latham from leaving the scene and finding some other means to hurt himself or others. An officer's official duties include a variety of community caretaker functions that work "to ensure the safety and welfare of the citizenry at large." *CG v. State*, 2011 WY 28, ¶ 12, 248 P.3d 186, 189 (Wyo. 2011). This Court looks at the totality of the circumstances to determine whether a use of force was excessive. *Id.* at ¶ 15, 248 P.3d at 190; *see also McEuen*, 2017 WY 15, ¶ 13, 388 P.3d at 783.

[¶10]  Officer Ruiz testified that, when he first arrived, Mr. Latham was mumbling and difficult to understand. He explained how the welfare check on I.L. transformed into a situation where he was concerned about Mr. Latham's safety:

> [Officer Ruiz]: And as Officer Ryan is talking to him, Mr. Latham brought the chemical bottle up to his mouth and took a drink of it.
>
> . . .
>
> At this point it went from a welfare check, now we have a situation where Mr. Latham is a danger to himself. And we can't just - - we can't just let that go by the wayside and act that it never happened.

3

[Prosecutor]: When you say he's a danger to himself, why is that?

[Officer Ruiz]: Most people do not drink chemicals.

After Ms. Hughes took I.L. from Mr. Latham, he ran away from the officers and toward the house, and Officer Ruiz had to run to catch up with him. Officer Ruiz testified during both direct and cross-examination that he made the decision to tackle Mr. Latham because he was a danger to himself, and he did not want Mr. Latham to get back inside. Officer Ruiz explained that the Cheyenne Police Department permits officers to use force when someone is a danger to themselves. He also testified that Mr. Latham was non-compliant with verbal commands. The evidence is sufficient to support the jury's finding that Officer Ruiz was lawfully engaged in the performance of his official duties because Mr. Latham was a danger to himself, and that the tackle was not excessive force under the circumstances. *See CG*, 2011 WY 28, ¶ 15, 248 P.3d at 190.

## B.    The Face Punches and Choke Hold

[¶11]  We next examine whether the evidence is sufficient to support the jury's finding Officer Ruiz did not use excessive force when he punched Mr. Latham and applied a rear-naked choke hold. Officer Ruiz testified he felt his holster move, looked down, and saw Mr. Latham pulling on his gun. In response, Officer Ruiz "slammed" one hand over his gun, Mr. Latham did not let go, and Officer Ruiz then punched Mr. Latham twice with the other hand. Officer Ruiz testified that punching Mr. Latham twice in the face was consistent with his training and experience because, "If somebody is trying to disarm you, take your weapon, you need to do what you can to make sure that weapon stays inside of your holster. And it's considered a deadly force encounter at that point." He explained that officers are permitted to use whatever force is necessary to "neutralize" a subject during a deadly-force encounter. Officer Ruiz testified that Mr. Latham did not let go of the gun after he was punched, and therefore it was still a deadly-force encounter and he "had to do what needed to be done in order to stop that altercation." When asked specifically about the rear-naked choke hold he used on Mr. Latham, Officer Ruiz explained that the Cheyenne Police Department did not teach the move but it was consistent with his training, because officers can use lethal force to end a deadly-force encounter. Officer Ruiz also testified that Mr. Latham did not release the weapon until he applied the rear-naked choke hold.

[¶12]  The jury also heard evidence that throughout the entire encounter, Mr. Latham failed to respond to the officer's verbal instructions. Officer Ruiz, Mr. Latham's cousin, Mr. Latham's mother, and Ms. Hughes all testified about the evolving and confusing nature of the situation, and Ms. Hughes testified that it was "chaotic." The evidence when viewed in the light most favorable to the State is sufficient to support the jury's finding that Officer Ruiz did not use excessive force and, thus, was engaged in the lawful

4

performance of his official duties when he punched Mr. Latham and applied a choke hold.

## II.     The evidence is sufficient to support the jury's finding that Mr. Latham had the specific intent to disarm Officer Ruiz

[¶13]  Mr. Latham argues that the evidence was insufficient to support the jury's finding that he had the specific intent required for attempted interference with a peace officer. While interference with a peace officer is a general intent crime, attempted interference with a peace officer is a specific intent crime. *See Kite v. State*, 2018 WY 94, ¶ 23, 424 P.3d 255, 263 (Wyo. 2018). This is because attempt crimes require the State to prove the person had the specific intent to commit the crime. *Id.* "[S]pecific intent may be properly proved by reasonable *inferences* from the character of such acts and their surrounding circumstances. In particular, the specifics of a defendant's conduct and other circumstantial evidence may permit the jury to infer that he acted with the specific intent to cause bodily injury." *Sam v. State*, 2017 WY 98, ¶ 72, 401 P.3d 834, 858 (Wyo. 2017) (alteration and emphasis in original) (quoting *Leavitt v. State*, 2011 WY 11, ¶ 10, 245 P.3d 831, 833 (Wyo. 2011)).

[¶14]  Viewing the evidence in the light most favorable to the State, and ignoring all evidence that favors Mr. Latham, there is sufficient evidence to support the jury's finding that he attempted to disarm Officer Ruiz. Officer Ruiz felt his gun and holster shift from the side of his thigh to the front. He witnessed Mr. Latham pulling on the gun with both hands, and he called to Officer Ryan for help, yelling: "He's going for my gun. Watch my gun." Officer Ruiz testified that he slammed one hand over his service weapon and punched Mr. Latham with the other, but Mr. Latham did not release the gun and continued to pull on it. Officer Ruiz also testified about past experiences when individuals inadvertently touched his duty belt, including weapons, and how they differed from his experience with Mr. Latham. He explained that, in past situations, people let go when he told them to, but Mr. Latham did not stop pulling on the weapon, even after getting punched in the face. The jury could reasonably infer from this evidence that Mr. Latham acted with the requisite specific intent when he attempted to disarm Officer Ruiz.

## *CONCLUSION*

[¶15]  The evidence was sufficient to support the jury's finding that Officer Ruiz did not use excessive force and therefore was engaged in the lawful performance of his official duties when he subdued Mr. Latham and to show Mr. Latham acted with the requisite specific intent. Affirmed.