# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 111

### APRIL TERM, A.D. 2022

### September 13, 2022

WILLIAM E. OGDEN,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0024

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*

> Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.

*Representing Appellee:*

> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Catherine M. Mercer*, Assistant Attorney General; David E. Singleton, Faculty Director, Prosecution Assistance Program, Cheyenne Municipal Court; Morgan I. Cloud, Student Director; Maridi A. Choma, Student Intern. Argument by Ms. Chomo.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

\* An Order Allowing Withdrawal of Counsel was entered on September 2, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     A jury found William Ogden guilty of one count of felony property destruction and defacement for damaging Efren Hernandez's pickup.  Mr. Ogden was sentenced to twelve to fourteen months of incarceration, but the district court suspended his sentence in favor of two years of unsupervised probation.  On appeal, Mr. Ogden argues there was insufficient evidence to support his conviction, and the prosecutor committed misconduct when he argued facts not introduced into evidence during his rebuttal closing argument. We affirm.

## *ISSUES*

[¶2]     Mr. Ogden raises two issues, which we restate as follows:

1.  Was there sufficient evidence to support Mr. Ogden's conviction for felony property destruction and defacement?

2.  Did the prosecutor commit misconduct during his rebuttal closing argument?

## *FACTS*

[¶3]     On August 27, 2019, someone bashed the driver's side of Mr. Hernandez's pickup with a cinder block.  Mr. Ogden was identified as the culprit and was charged with felony property destruction and defacement.  At a one-day jury trial, the State called three witnesses.  Mr. Ogden did not testify or call any witnesses.  The State's witnesses were Mr. Hernandez, Officer Thomas Gamblin, and Philip Canaday.  A summary of their testimony follows.

**Mr. Hernandez**

[¶4]     Mr. Hernandez owned a second home in Rawlins, Wyoming.  On August 27, 2019, he went there to do some remodeling work, and he parked his pickup on the street in front of the property.  While working inside the house, he heard a loud bang.  Almost immediately, within seconds, he looked out the window and saw Mr. Ogden walking away from his pickup and "walking across [his] property to [Mr. Ogden's] property."  Mr. Ogden's property was directly across the street from Mr. Hernandez's property.  Mr. Hernandez did not see anyone else walking or driving nearby.  He went outside[1] and saw

---

[1] There is a discrepancy between Mr. Hernandez's testimony at trial and his victim impact statement regarding when he went outside.  On direct examination, Mr. Hernandez testified that after he heard the noise he went outside **"within thirty seconds."**  (Emphasis added.)  However, in his victim impact

that the driver's side of his pickup had been severely dented. He noticed cement powder on the ground near the damaged side of his truck, and it caused him to think that someone had hit his truck with a cinder block. At this point, he called 911.

**Officer Gamblin**

[¶5]    Officer Gamblin testified that he received a call from dispatch reporting that someone had damaged Mr. Hernandez's truck and the suspect, Mr. Ogden, was driving away from the area. When Officer Gamblin arrived at the scene, Mr. Ogden's vehicle was parked on his property and Mr. Ogden was standing outside. Officer Gamblin first talked to Mr. Hernandez who, consistent with his testimony, reported he was repairing his second home when he heard a loud crash, looked out the window, and saw Mr. Ogden walking away from his pickup truck. Officer Gamblin asked Mr. Hernandez if Mr. Ogden was carrying a cinder block. Mr. Hernandez told Officer Gamblin that he did not see one and pointed out that Mr. Ogden was walking away the entire time.

[¶6]    Officer Gamblin then assessed the damage to the pickup. The driver's side door was crushed. He saw concrete dust and debris on the truck and the ground. The damage was in the shape of a perfect square resembling the end of a cinder block. He opined that "it was very obvious that whoever had caused the damage had taken a cinder block . . . and had hammered that door really hard, leaving white debris around[.]"

[¶7]    Officer Gamblin searched the area for full cinder blocks. He did not find any around Mr. Hernandez's truck or property. He crossed the street to Mr. Ogden's property where he discovered "piles of cinder block. Most of them were broken pieces . . . some [were] half pieces [and others were] . . . full-sized cinder blocks . . . ." He examined the full cinder blocks and did not find any with paint residue or broken edges that would match the pieces laying on the ground near Mr. Hernandez's truck. He took one of the full cinder blocks and placed it right below the damaged area on the pickup. The shape of the cinder block matched the damage. Officer Gamblin never found the specific cinder block that had caused the damage to Mr. Hernandez's truck.

[¶8]    Officer Gamblin interviewed Mr. Ogden. He asked about the damage to Mr. Hernandez's truck, told Mr. Ogden that he suspected a cinder block had caused the damage, and informed him that he had been accused of causing the damage. Mr. Ogden replied, "What cinder block did I use? You got to prove which one I used." In Officer Gamblin's experience, this was an unusual response. He testified that "[a] suspect would normally say that they didn't do it, that they had nothing to do with it." Officer Gamblin also testified

---

statement he said, "I see this man walking straight from my truck, **so within five minutes** I come out of my house and approach my truck." (Emphasis added.) When defense counsel questioned Mr. Hernandez about the inconsistency, Mr. Hernandez said he did not recall reporting it was five minutes and did not attempt to explain further.

that during this conversation, Mr. Ogden yelled across the street that Mr. Hernandez "had no proof that he had run into his truck."

**Mr. Canaday**

[¶9]    Mr. Canaday, the owner of Wreck-A-Mend Collision Center, testified that he fixed Mr. Hernandez's truck by repairing the front door and replacing the back door.  He estimated the cost to repair the damage was $4,348.19.

**Closing Arguments[2]**

[¶10] The prosecutor in closing explained the elements of property destruction and defacement, talked about the circumstantial evidence, and asked the jury to use their common sense in connecting the circumstances.  In his closing argument, defense counsel argued that there was no direct or circumstantial evidence connecting Mr. Ogden to the damage to Mr. Hernandez's truck.  Defense counsel emphasized that Mr. Ogden "wasn't walking away with a brick.  There was no brick or no cinder block found near the vehicle, and there was never any evidence that [Mr. Ogden] took that alleged cinder block away and hid it from the police."  On rebuttal, the prosecutor responded:

> Now, you have heard a couple of things that aren't necessarily accurate.  You heard that the defendant was walking across the street, which is not what you were told.  Mr. Hernandez said he saw him walking away from my truck.  **He didn't say he wasn't carrying a cinder block.  He said, I couldn't tell because his back was to me.**
>
> That is where you use your common sense and think about how you might carry a cinder block and whether or not you can see it from behind someone.

(Emphasis added.)  Defense counsel did not object to the prosecutor's rebuttal statement.

[¶11]  The jury found Mr. Ogden guilty of felony property destruction and defacement.  The district court sentenced him to twelve to fourteen months of incarceration but suspended his sentence in favor of two years of unsupervised probation.  Mr. Ogden appeals, arguing there was insufficient evidence to support his conviction, and the prosecutor's statement made during rebuttal closing argument amounted to misconduct.

---

[2] At the close of the State's case, Mr. Ogden made a motion for a directed verdict.  The court took the matter under advisement.  Several days after trial, Mr. Ogden renewed his motion.  The court denied Mr. Ogden's motion concluding that based on the evidence presented, a jury could reasonably conclude that Mr. Ogden committed the offense of felony property destruction and defacement beyond a reasonable doubt.

*DISCUSSION*

**I.**     ***There was sufficient evidence to support Mr. Ogden's conviction for felony property destruction and defacement.***

[¶12]  We first address Mr. Ogden's argument that there was insufficient evidence to support his conviction.

**A.     Standard of Review**

[¶13]  When reviewing a claim for sufficiency of the evidence "we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." *Roman v. State*, 2022 WY 48, ¶ 9, 507 P.3d 453, 456 (Wyo. 2022) (quoting *Regan v. State*, 2015 WY 62, ¶ 10, 350 P.3d 702, 705 (Wyo. 2015)).  "We 'examine[] the evidence in the light most favorable to the State.'" *Barrett v. State*, 2022 WY 64, ¶ 20, 509 P.3d 940, 945 (Wyo. 2022) (quoting *Cotney v. State*, 2022 WY 17, ¶ 9, 503 P.3d 58, 63 (Wyo. 2022)).  "We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it." *Id.* (quoting *Cotney*, ¶ 9, 503 P.3d at 63).  "We also disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Id.* (quoting *Cotney*, ¶ 9, 503 P.3d at 63).  "We do not reweigh the evidence or reexamine the credibility of the witnesses." *Latham v. State*, 2021 WY 29, ¶ 6, 480 P.3d 527, 530 (Wyo. 2021) (quoting *Armajo v. State*, 2020 WY 153, ¶ 21, 478 P.3d 184, 191 (Wyo. 2020)).

**B.     Analysis**

[¶14]  Mr. Ogden argues he was wrongfully convicted of felony property destruction and defacement under Wyo. Stat. Ann. § 6-3-201.[3]  He relies on *Mraz v. State*, 2014 WY 73, 326 P.3d 931 (Wyo. 2014) to support his contention.

---

[3] Wyo. Stat. Ann. § 6-3-201 sets out the crime of property destruction and defacement:

> (a)     A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.
>
> (b)     Property destruction and defacement is:
>
>                          .     .     .
>
> (iii)     A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured property or the value of the property if destroyed is one thousand dollars ($1,000.00) or more.

Wyo. Stat. Ann. § 6-3-201(a), (b)(iii) (LexisNexis 2021).

4

[¶15]   In *Mraz*, Ms. Mraz was convicted of larceny. *Mraz*, ¶¶ 3, 9, 326 P.3d at 932, 934. Ms. Mraz, a bartender at the Eagles Club in Sheridan, Wyoming, reported to the police that when she arrived at work around 10:55 a.m. someone had come "from behind and pushed her head against the wall." *Id.* ¶ 3, 326 P.3d at 932.  She said she did not see the person but believed he or she fled out the door.  *Id.*  She reported that after the incident, she went downstairs where the safe was located and found money bags, register tills, and a petty cash box missing from the safe.  *Id.*

[¶16]   The evidence showed that Ms. Mraz lied about when she arrived at work that morning.  *Id.* ¶ 4, 326 P.3d at 932.  "Ms. Mraz's access code had been used to turn the [alarm] system off at 10:40 a.m., on at 10:43 a.m. and off again at 10:55 a.m. just before the alleged assault." *Id.*  Surveillance footage showed "Ms. Mraz's vehicle traveling from . . . her home toward the Eagles Club shortly before her access code was used the first time," Ms. Mraz leaving the Eagles Club a few minutes later, and then heading back toward her home.  *Id.*  It also showed her vehicle headed back toward "the Eagles Club shortly before her access code was used the second time." *Id.*  The police never found the missing items from the safe.  *Id.*

[¶17]   On appeal, Ms. Mraz argued that the evidence presented at trial was insufficient to support her conviction.  *Id.* ¶ 1, 326 P.3d at 932.  There was no direct evidence that Ms. Mraz took the items from the safe.  *Id.* ¶ 14, 326 P.3d at 935.  Instead, the State relied on circumstantial evidence showing Ms. Mraz had the opportunity to take the items from the safe "in the three minutes between turning the security system off at 10:40 and back on at 10:43." *Id.*  We discussed cases where we found that opportunity evidence was sufficient to support the verdict and noted that in those cases "there has also been evidence that the defendant was found in possession of the stolen property, had a motive to commit the crime, attempted to avoid apprehension, or was directly linked to the crime." *Id.* ¶ 16, 326 P.3d at 936.  We held that "opportunity alone is insufficient to support a conviction." *Mraz*, ¶ 15, 326 P.3d at 935–36 (citing *Jozen v. State*, 746 P.2d 1279, 1283 (Wyo. 1987); *Smizer v. State*, 752 P.2d 406, 411 (Wyo. 1988); *Fischer v. State*, 811 P.2d 5, 8 (Wyo. 1991)).  We found that there was no evidence Ms. Mraz possessed the stolen property, had a motive to steal from the Eagles Club, had ill will towards its owners or employees, attempted to leave town after the items were stolen, or had any connection to the theft. *Mraz*, ¶ 19, 326 P.3d at 937.  Because the opportunity evidence was unsupported by any other evidence, we concluded there was insufficient evidence to support Ms. Mraz's conviction. *Id.* ¶ 23, 326 P.3d at 938.

[¶18]   Here, as in *Mraz*, there was no direct evidence *that Mr. Ogden damaged Mr. Hernandez's* truck.  The State presented evidence that Mr. Hernandez's truck was damaged and evidence that Mr. Ogden was the only person in the vicinity immediately (within seconds) after the "bang" sounded from something hitting the truck.  He drove away from his house following the incident and then returned.  His yard was littered with cinder blocks matching the shape of the object used to cause the damage to Mr. Hernandez's truck.  He

5

had an unusual reaction to Officer Gamblin asking if he "had been the one that had caused the damage." We have "said that evidence of opportunity to commit the act is a link, which considered in connection with other incriminating facts, may prove circumstantially that an accused did commit the crime." *Mraz*, ¶ 15, 326 P.3d at 936 (citing *Downs v. State*, 581 P.2d 610, 616 (Wyo. 1978); *Wells v. State*, 613 P.2d 201, 203 (Wyo. 1980); *Jacobs v. State*, 641 P.2d 197, 198–99 (Wyo. 1982); *King v. State*, 718 P.2d 452, 453 (Wyo. 1986); *Cowell v. State*, 719 P.2d 211, 214 (Wyo. 1986); *Jozen*, 746 P.2d at 1283; *McGarvey v. State*, 2002 WY 149, ¶ 16, 55 P.3d 703, 706 (Wyo. 2002); *Cureton v. State*, 2003 WY 44, ¶ 18, 65 P.3d 1250, 1254 (Wyo. 2003); *Brown v. State*, 2004 WY 57, ¶ 14, 90 P.3d 98, 103 (Wyo. 2004)).

[¶19] Mr. Hernandez's testimony *directly linked Mr. Ogden to the scene of crime contemporaneously with the time of its commission*—he saw Mr. Ogden by the truck within seconds of the incident and no one else was in the vicinity. The "[o]pportunity to commit the crime, . . . when linked with other incriminating facts, may establish the guilt of the defendant." *Brown*, ¶ 14, 90 P.3d at 103 (quoting *Fischer*, 811 P.2d at 8); *see also McGarvey*, ¶ 16, 55 P.3d at 706 and *Downs*, 581 P.2d at 616 (burglary cases). Here Mr. Ogden possessed cinder blocks that matched the shape and size of the damage to the truck. Mr. Ogden left the neighborhood immediately after moving away from the damaged pickup and returned shortly thereafter. We do not "substitute our judgment for that of the jury; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Cureton*, ¶ 21, 65 P.3d at 1254. *See also Blake v. State*, 933 P.2d 474, 480 (Wyo. 1997) and *Harris v. State*, 933 P.2d 1114, 1123 (Wyo. 1997). The evidence when viewed in the light most favorable to the State, reasonably supports the jury's verdict. *See Barrowes v. State*, 2017 WY 23, ¶ 30, 390 P.3d 1126, 1131 (Wyo. 2017) (concluding there was sufficient evidence to support Mr. Barrowes' conviction of aggravated homicide by vehicle even though it was "a close call as to whether Barrowes' conduct f[ell] into the felonious category or not"). There was sufficient evidence to support Mr. Ogden's conviction.

## II.     *The prosecutor did not commit misconduct during his rebuttal closing argument.*

[¶20] Mr. Ogden argues that the prosecutor engaged in misconduct during rebuttal closing argument because the prosecutor argued facts not introduced into evidence. The State responds that the prosecutor's statements were appropriate and directed the jury to reasonable inferences that could be drawn from the evidence.

[¶21] "At its core, prosecutorial misconduct in closing argument is a tactic meant to encourage a conviction on an improper basis." *Armajo*, ¶ 35, 478 P.3d at 194 (quoting *Larkins v. State*, 2018 WY 122, ¶ 96, 429 P.3d 28, 50 (Wyo. 2018)). "It is argument without reference to the evidence or those reasonable inferences that can be drawn from [the] evidence and threatens a defendant's right to a fair trial." *Id.* (quoting *Larkins*, ¶ 96, 429 P.3d at 50). "We measure the propriety of [the] closing arguments in the context of the entire argument and compare them with the evidence produced at trial." *Bogard v.*

6

*State*, 2019 WY 96, ¶ 19, 449 P.3d 315, 321 (Wyo. 2019) (quoting *Doherty v. State*, 2006 WY 39, ¶ 18, 131 P.3d 963, 969 (Wyo. 2006)).

[¶22]  Mr. Ogden "bears the burden of establishing prosecutorial misconduct." *Mendoza v. State*, 2021 WY 127, ¶ 12, 498 P.3d 82, 85 (Wyo. 2021) (quoting *Armajo*, ¶ 32, 478 P.3d at 193).  Mr. Ogden did not object to the prosecutor's statement at trial, so the plain error standard applies.  *Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021) (citing *Dixon v. State*, 2019 WY 37, ¶ 39, 438 P.3d 216, 231 (Wyo. 2019)).  "To satisfy the plain error standard, Mr. [Ogden] must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice."  *Mendoza*, ¶ 12, 498 P.3d at 85 (quoting *Ridinger*, ¶ 33, 478 P.3d at 1168).

[¶23]  The prosecutor's statements are clearly reflected in the record:

> Now, you have heard a couple of things that aren't necessarily accurate.  You heard that the defendant was walking across the street, which is not what you were told.  Mr. Hernandez said he saw him walking away from my truck.  **He didn't say he wasn't carrying a cinder block.  He said, I couldn't tell because his back was to me.**
>
> That is where you use your common sense and think about how you might carry a cinder block and whether or not you can see it from behind someone.

(Emphasis added.)  The first prong of plain error is satisfied, and we turn to the second prong.  Mr. Ogden "must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way." *Mendoza*, ¶ 13, 498 P.3d at 85 (quoting *Ridinger*, ¶ 34, 478 P.3d at 1168).  Mr. Ogden argues, and we agree, that it is a clear and unequivocal rule of law that a prosecutor may not make arguments based on evidence not presented at trial.  *See Doherty*, ¶ 20, 131 P.3d at 969–70 ("Although wide latitude is allowed in discussing inferences to be drawn from the evidence, prosecutors must limit their closing arguments to commenting on the evidence." (citing *Condra v. State*, 2004 WY 131, ¶ 22, 100 P.3d 386, 392 (Wyo. 2004))); *Montoya v. State*, 971 P.2d 134, 136–37 (Wyo. 1998) ("It is [well settled] law that an attorney's arguments are limited to the evidence presented in the courtroom." (citing *Chavez-Becerra v. State*, 924 P.2d 63, 70 (Wyo. 1996))); *Dice v. State*, 825 P.2d 379, 384 (Wyo. 1992) ("It is clear that great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence[.]").

[¶24]  At the same time, it is equally clear that "[i]n presenting closing argument, the prosecutor is entitled to reflect upon the evidence and . . . draw reasonable inferences from

that evidence[.]" *Black v. State*, 2017 WY 135, ¶ 33, 405 P.3d 1045, 1056 (Wyo. 2017) (quoting *English v. State*, 982 P.2d 139, 148 (Wyo. 1999)). "An inference is a process of reasoning by which a fact or proposition is deduced fairly and logically from other facts proven or admitted." *Grimes v. State*, 2013 WY 84, ¶ 11, 304 P.3d 972, 975 (Wyo. 2013) (quoting *Seeley v. State*, 959 P.2d 170, 176 (Wyo. 1998)).

[¶25] Mr. Hernandez testified that he heard a loud bang, looked out of his window, and saw Mr. Ogden walking away from his pickup truck. He then saw Mr. Ogden "walking across [his] property to [Mr. Ogden's] property." Officer Gamblin testified that when he asked Mr. Hernandez whether Mr. Ogden was carrying a cinder block, Mr. Hernandez replied he did not see Mr. Ogden carrying a cinder block but Mr. Ogden was walking away the entire time.

[¶26] A reasonable inference could be drawn that if Mr. Ogden was walking away from the pickup truck with his back to Mr. Hernandez, he may have been carrying a cinder block that Mr. Hernandez would not have been able to see. A prosecutor "may suggest reasonable inferences from the evidence." *Bogard*, ¶ 19, 449 P.3d at 321 (citing *Teniente v. State*, 2007 WY 165, ¶ 30, 169 P.3d 512, 524 (Wyo. 2007)). The prosecutor did not violate a clear and unequivocal rule of law by reflecting on the evidence and pointing out that the jury could infer that Mr. Ogden was carrying a cinder block. Because Mr. Ogden failed to satisfy the second plain error prong, he has not established plain error.

## *CONCLUSION*

[¶27] The State presented sufficient evidence for the jury to find Mr. Ogden guilty of felony property destruction and defacement. The prosecutor did not engage in misconduct during rebuttal closing argument. We affirm.