# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 74

### APRIL TERM, A.D. 2023

#### July 25, 2023

RICHARD JAMES THUNDER,

Appellant
(Defendant),

v.                                                                          S-22-0307

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
The Honorable Jason M. Conder, Judge

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General; Darrell D. Jackson, Faculty Director, Prosecution Assistance Program; Maridi A. Choma, Student Director; Samuel L. French, Student Intern.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    A jury convicted Richard James Thunder of four counts of aggravated assault and battery.  He claims the evidence at trial was insufficient to support his convictions.  We affirm.

## ISSUE

[¶2]    Mr. Thunder raises a single issue:

> Did the State present sufficient evidence at trial to support his aggravated assault and battery convictions?

## FACTS

[¶3]    In the late evening of October 27, 2021, Mr. Thunder was drinking alcohol with Courtney Smith, Jesse Youngchief, and Naoma Biglake at Courtney and Jesse's home in Riverton.  When Courtney and Naoma went outside to smoke, Mr. Thunder pulled a silver revolver with a black handle out of his front waistband and showed it to Jesse.[1]  Mr. Thunder told Jesse it was a ".38 special."  Around midnight, Mr. Thunder, Courtney, Jesse, and Naoma took a cab to a local bar to meet Courtney's friend, Winona Whiteman.  There they had a verbal altercation with Leighanna Shoulderblade, Javaun Shoulderblade, Jarrick Trumbull, and Ashley Addison, Jr. (collectively "Leighanna's group").  Mr. Thunder again showed Jesse the gun, telling him "just remember I [have] this if anybody wants to mess around."  All of the parties left the bar at closing time (around 2:00 a.m.).

[¶4]    Once outside, Courtney and Leighanna argued in the parking lot.  Jesse separated Courtney and Leighanna, and Courtney and Jesse began walking home, followed by Mr. Thunder and Winona.  As they walked, Leighanna's group pulled up alongside them in Leighanna's vehicle, cursed at them, and threw empty beer cans and bottles at them.  As Leighanna's vehicle drove away, Mr. Thunder took his gun from his waistband, said "F*** you fools," and fired 3-5 shots at the vehicle.  The last shot hit the vehicle just below the passenger-side taillight.  Courtney and Jesse ran to a nearby gas station, while Leighanna's group drove to her cousin's house.  Leighanna called 911 and reported a man in a blue t-shirt had shot at her car.

[¶5]    Officer Shawn Tatro with the Riverton Police Department responded to the area of the shooting and observed Courtney and Jesse running to the gas station.  He patted them down for weapons but did not find any.  When he asked them what had happened, they said they heard gunshots so they ran.  While talking with Courtney and Jesse, Officer Tatro

---

[1] Because some of the individuals share the same surname, we will refer to all parties, except Mr. Thunder and Officer Tatro, by their first names.

observed a male wearing a light blue hooded sweatshirt come out from the nearby alley. When the man saw Officer Tatro and his marked patrol car, he turned and ran the other way. Officer Tatro pursued the man in his patrol car but did not find him. Officer Tatro and two other police officers went to Courtney and Jesse's house and asked them about the man in the blue hoodie. Courtney said the man was "Rick Thunder."

[¶6]   The State charged Mr. Thunder with four counts of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) & (b) (LexisNexis 2021) for threatening to use a drawn and deadly weapon on Leighanna, Javaun, Jarrick, and Ashley. After a four-day trial, the jury found Mr. Thunder guilty on all four counts; the district court sentenced him to a total term of 42-108 months in prison. This appeal followed.

## DISCUSSION

[¶7]   When reviewing whether the trial evidence was sufficient to support a conviction,

> "we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." *Roman v. State*, 2022 WY 48, ¶ 9, 507 P.3d 453, 456 (Wyo. 2022) (quoting *Regan v. State*, 2015 WY 62, ¶ 10, 350 P.3d 702, 705 (Wyo. 2015)). "We 'examine[] the evidence in the light most favorable to the State.'" *Barrett v. State*, 2022 WY 64, ¶ 20, 509 P.3d 940, 945 (Wyo. 2022) (quoting *Cotney v. State*, 2022 WY 17, ¶ 9, 503 P.3d 58, 63 (Wyo. 2022)). "We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it." *Id.* (quoting *Cotney*, ¶ 9, 503 P.3d at 63). "We also disregard any evidence favorable to the appellant that conflicts with the State's evidence." *Id.* (quoting *Cotney*, ¶ 9, 503 P.3d at 63). "We do not reweigh the evidence or reexamine the credibility of the witnesses." *Latham v. State*, 2021 WY 29, ¶ 6, 480 P.3d 527, 530 (Wyo. 2021) (quoting *Armajo v. State*, 2020 WY 153, ¶ 21, 478 P.3d 184, 191 (Wyo. 2020)).

*Ogden v. State*, 2022 WY 111, ¶ 13, 516 P.3d 870, 874 (Wyo. 2022).

[¶8]   Mr. Thunder was convicted of aggravated assault and battery under § 6-2-502(a)(iii), which states: "A person is guilty of aggravated assault and battery if he . . . [t]hreatens to use a drawn deadly weapon on another unless reasonably necessary in defense of his person, property or abode or to prevent serious bodily injury to another[.]" "The 'threatens to use' element of § 6-2-502(a)(iii) 'requires proof of an actual threat of physical injury during the act of employing a deadly weapon.'" *Cotney*, ¶ 10, 503 P.3d at

2

63 (quoting *Johnston v. State*, 747 P.2d 1132, 1134 (Wyo. 1987)). """A threat [under § 6-2-502(a)(iii)] is an expression of an intention to inflict pain, injury, or punishment. It may be expressed by words or acts, or a combination of words and acts.""" *Id.*, ¶ 10, 503 P.3d at 64 (quoting *Hill v. State*, 2016 WY 27, ¶ 15, 371 P.3d 553, 559 (Wyo. 2016), and *Johnston*, 747 P.2d at 1135) (other citation omitted).

[¶9]   Mr. Thunder argues the State presented insufficient evidence at trial showing he "[t]hreaten[ed] to use a drawn deadly weapon on another." He does not dispute that firing a gun 3-5 times at a vehicle containing four individuals constitutes "[t]hreaten[ing] to use a drawn deadly weapon on another." Rather, he claims the State presented insufficient evidence showing <u>he</u> was the shooter.

[¶10] There was ample evidence at trial for  the jury to reasonably find beyond a reasonable doubt that Mr. Thunder was the individual who fired the gun at Leighanna's vehicle. Jesse testified Mr. Thunder was carrying a gun in his front waistband and twice showed the gun to him. At the bar, Mr. Thunder reminded Jesse that he had the gun "if anybody wants to mess around." On the street, after encountering Leighanna's vehicle, Jesse heard Mr. Thunder say "F*** you fools" and saw him with an arm extended holding the gun. Jesse heard the first gunshot, which made his ears ring, and saw its muzzle blast. He immediately ducked down and ran; he heard a total of three gunshots. Javaun told the jury he had his head and shoulders out an open window of Leighanna's vehicle and saw Mr. Thunder with his arms raised and his hands holding a square black item which looked like a gun. Javaun immediately pulled his head and shoulders into the vehicle and heard two gunshots. He then "peeped" his head out of the window and saw Mr. Thunder shoot two more times, the last shot hitting the rear of Leighanna's vehicle. Jarrick also testified at trial about what he experienced that night/early morning. He said he "saw [Mr.] Thunder lift up his shirt and reach into his pants." Jarrick "duck[ed] [his] head in the car. And not too long, maybe, like, two seconds after, [he] heard the gunshots, and the last one hit the car." Leighanna described the shooter to the 911 operator as a man in a blue t-shirt, and Officer Tatro observed a man in a blue hooded sweatshirt running away from the scene. Courtney told Officer Tatro that Mr. Thunder was the man in the blue hoodie.

[¶11] In his brief, Mr. Thunder states:  "Aside from [Jesse]'s testimony, there was no evidence presented that Mr. Thunder drew a deadly weapon, or that he threatened to use a deadly weapon against the occupants of the car." Mr. Thunder ignores Javaun's and Jarrick's testimony, stated above. In any event, Mr. Thunder seems to admit Jesse's testimony provided evidence showing Mr. Thunder was the shooter. That testimony alone provided sufficient evidence for the jury to reasonably conclude beyond a reasonable doubt that Mr. Thunder shot at Leighanna's vehicle.

[¶12] Mr. Thunder claims the evidence was insufficient to show he was the shooter because the State's witnesses provided "wildly inconsistent" testimony concerning the events of that night/early morning. Mr. Thunder is correct that the witnesses offered

conflicting testimony as to the exact location of the shooting, where Leighanna's car was heading, the color of her vehicle, whether Mr. Thunder was wearing a blue t-shirt or a blue sweatshirt, and the description of the gun. He also accurately points out: (1) no one but Jesse testified that Mr. Thunder said "F*** you fools" prior to the shooting, even though Javaun had his head and shoulders out of the open car window; (2) Leighanna and Courtney never saw Mr. Thunder with a gun and Courtney did not feel a gun when she hugged Mr. Thunder earlier in the evening; (3) Courtney, who was walking just ahead of Jesse at the time of the shooting, did not know where the gunshots came from but knew they did not come from anywhere near her because they were not very loud; (4) Javaun claimed to have had a good view of the shooter yet could not identify Mr. Thunder as the shooter in the courtroom; and (5) Courtney owned a 9 mm Glock at the time of the shooting and although Officer Tatro did not find any weapons on her when he patted her down, he did not search her purse.

[¶13]  The inconsistencies in the witnesses' testimony are not surprising or unexpected given the shooting occurred at around 2:00 a.m., some of the witnesses had been drinking, and the sudden and traumatic nature of the offense. Nevertheless, "[u]nder our standard of review, the jury was entitled to weigh the conflicting evidence. We do not, on appeal, reweigh the evidence or reexamine the credibility of the witnesses." *Huckins v. State*, 2020 WY 21, ¶ 16, 457 P.3d 1277, 1280 (Wyo. 2020) (citing *Thompson v. State*, 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018), and *Mraz v. State*, 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016)).  *See also, Martinez v. State*, 2018 WY 147, ¶ 21, 432 P.3d 493, 498 (Wyo. 2018) ("[I]t is the jury's responsibility to resolve conflicts in the evidence. . . .  We therefore decline Ms. Martinez's invitation to substitute our judgment for that of the jury and need not explain how CM's mother's testimony can be reconciled with Ms. Brown's or CM's testimony.") (internal citations omitted); *Larkins v. State*, 2018 WY 122, ¶ 44, 429 P.3d 28, 40 (Wyo. 2018) ("It is the jury's job to weigh conflicting testimony and decide who to believe. . . .  Given the verdict rendered, it is obvious that the jury believed [the victim's] siblings regarding whether Mr. Larkins [hit the victim with] the backscratcher . . . .  On appeal, we do not second-guess that decision.") (internal citations omitted).  Our job is to determine whether the trial evidence, considered in the light most favorable to the State, was sufficient for the jury to have found beyond a reasonable doubt that Mr. Thunder fired a gun at Leighanna's vehicle.  Given the above testimony, in particular Jesse's testimony, the simple answer is yes.

## CONCLUSION

[¶14]  The State presented sufficient evidence at trial to support Mr. Thunder's aggravated assault and battery convictions.

[¶15]  Affirmed.

4