# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 100

**APRIL TERM, A.D. 2025**

**September 12, 2025**

ANDREW LEE BOYER,

Appellant
(Defendant),

v.

S-24-0295

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Stuart S. Healy III, Judge*

*Representing Appellant:*

Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; and Elizabeth B. Lance, Toni E. Hartzel, Lance & Hall LLP, Cheyenne, Wyoming. Argument by Ms. Lance.

*Representing Appellee:*

Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General. Argument by Ms. Rude.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and FROELICHER, D.J.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FROELICHER, District Judge.**

[¶1]  A jury convicted Andrew Boyer of first-degree arson for starting a fire in his trailer home.  On appeal, Mr. Boyer argues there was not sufficient evidence for a jury to convict him of first-degree arson and the district court erred when it excluded evidence which Mr. Boyer believes supported his theory of defense.  We affirm.

## ISSUES

[¶2]  Mr. Boyer raises two issues, which we rephrase as:

1. Was there substantial evidence to support Mr. Boyer's conviction of first-degree arson?

2. Did the district court violate Mr. Boyer's constitutional rights when it excluded evidence that supported his theory that an alternative suspect started the fire?

## FACTS

[¶3]  Mr. Boyer owned a trailer home located at 1605 Echeta Road, Lot 21 in Gillette.  On the morning of August 2, 2022, Charlene Haglund was smoking a cigarette outside of her trailer home, directly across from Mr. Boyer's trailer home.  Mr. Boyer approached Ms. Haglund and asked if he could borrow her lighter.  He lit his cigarette, made some small talk, and walked toward the main road.  Ms. Haglund said Mr. Boyer was wearing a dark-colored polo shirt.  About thirty minutes later, Ms. Haglund smelled and saw smoke coming from Mr. Boyer's trailer home.  She had her boyfriend call 911 to report the possible fire.  Ms. Haglund did not see anyone else exit Mr. Boyer's trailer that morning.

[¶4]  After leaving Ms. Haglund's home, Mr. Boyer stopped at JB Auto Glass.  Mr. Boyer was wearing shorts, flip-flops, and a black T-shirt.  He had a dog with him.  He asked Joseph Billington, owner of JB Auto Glass, if he could use the restroom.  Mr. Billington gave him permission.  Mr. Billington noticed a strong bleach odor coming from the restroom after Mr. Boyer finished using it.  Mr. Boyer was covered in bleach when he came out of the restroom, and his shirt had bleach spot stains all over it.  There was also bleach on his flip-flops.  Mr. Billington asked Mr. Boyer what happened and if he was alright.  Mr. Boyer told him not to worry about it.  Mr. Boyer grabbed his dog and left on foot, in the opposite direction he came from.  The bleach had been in a spray bottle.  There was bleach on the floor when Mr. Billington went into the restroom afterwards.

[¶5]  Following Mr. Boyer's stop at JB Auto Glass, Mr. Boyer's 17-year-old son saw his father walking while Mr. Boyer's son was out to get the mail.  Mr. Boyer's son lived

with his mother, who is also Mr. Boyer's former girlfriend, Tanya Exley. Mr. Boyer's son gave Mr. Boyer a ride to Ms. Exley's house. When he arrived at the house, Mr. Boyer was wearing his son's gray tank top that had been left in Ms. Exley's vehicle. Mr. Boyer entered the house, and Ms. Exley said he smelled like cleaning supplies. She asked why he smelled like cleaning supplies. Mr. Boyer told her he stopped somewhere when walking to her house to use the restroom and washed his hands with cleaning supplies, because that was what was in the restroom. He also said he had been cleaning his trailer that morning. Approximately ten minutes after he arrived, Ms. Exley drove Mr. Boyer to the golf course to talk with his father about watching his dogs, and then she drove Mr. Boyer directly to his trailer. They spent no more than twenty minutes visiting with Mr. Boyer's father. Ms. Exley dropped Mr. Boyer off at the entrance of the trailer park because there were fire trucks and law enforcement vehicles near Mr. Boyer's trailer home. Ms. Exley said Mr. Boyer was acting strange and appeared to be agitated. She believed he recently used methamphetamine.

[¶6] There was nobody located in the trailer when first responders arrived on scene or entered the trailer. Two dogs, however, were located near the trailer and were collected by the police department The dogs belonged to Mr. Boyer.

[¶7] First responders observed light smoke coming from the main doorway of Mr. Boyer's trailer. Firefighters shut off the gas to the trailer and entered through the front door. There were two doors into the trailer and several windows. All the doors and windows were shut and locked. Once inside, firefighters observed thick smoke close to the floor. They discovered all four burners were turned on and hot on the gas stove in the kitchen. There was nothing on the burners. They also observed three different places where a fire had been lit: the west wall, the east wall, and the north wall. Each fire spot was distinct and not connected to one another, which made the firefighters suspicious. There were combustible materials surrounding the trailer, such as trees and bushes. The fire was put out and the smoke was cleared from the trailer.

[¶8] Approximately one hour and thirty-nine minutes after the report of a possible fire was made, Mr. Boyer walked up to his trailer. He was wearing jeans, a gray tank top, and sandals. Police officers told him what had happened and advised him that he could not enter the trailer because they were obtaining a search warrant. Officers eventually obtained a search warrant.

[¶9] Officers questioned Mr. Boyer on his whereabouts that morning. He told them his dogs got out after he smoked a cigarette, so he chased after them. He said he was able to catch one dog and took it to Ms. Exley's house. He told the officers he did not stop anywhere prior to arriving at Ms. Exley's house. Mr. Boyer then said he asked her to give him a ride home and help him find his other dogs. When he saw the firetrucks, he asked Ms. Exley to keep his dog until he found out what was happening. Mr. Boyer told law enforcement Ms. Exley had given him a ride to the golf course so that he could speak

with his father.  Officers found Mr. Boyer to be uncooperative in answering their questions.

[¶10]  During their investigation officers learned Mr. Boyer changed clothes between JB Auto Glass and Ms. Exley's house and they attempted to look for the shirt.  They were unable to find any clothing in the area between JB Auto Glass and Ms. Exley's house.  Law enforcement testified that bleach and cleaning products can affect and degrade the integrity of evidence.

[¶11]  An investigator was assigned to determine the cause of the fire.  No witnesses saw how the fire was started or who started it.  The investigator found there were two or three different fire spots that were not joined by a source.  He also said the doors and windows were locked and shut, and there was no evidence of forced entry.  The investigator determined that the fire was not caused by an electrical issue.  He found there was no evidence that the fire started naturally or was caused by a utility.  The investigator determined the cause of the fire was incendiary, meaning it was started by somebody in a place where they knew it should not have been started.  He said somebody intentionally started the fire, and that it was not an accident.  During his investigation, he learned that the trailer was uninsured.

[¶12]  Mr. Boyer was charged with first-degree arson, pursuant to Wyo. Stat. Ann. §§ 6-3-101(a) and (b).  He pled not guilty, and the district court held a four-day jury trial.

[¶13] Mr. Boyer testified in his own defense.  He said he bought the trailer approximately a year before the incident and had rented it out.  He was temporarily living in it on August 2, trying to fix it to rent it again or sell it.  Mr. Boyer had spent the night at a friend's house on August 1 and had used methamphetamine.  He testified he was dropped off at the trailer on the morning of August 2, asked Ms. Haglund if he could use her lighter, went back inside the trailer, and put a load of laundry in his washing machine.  Mr. Boyer stated his dogs ran away after he let them out, and he immediately found one of them.  He said his dogs often got out and would return, so he was not concerned.  Since he did not have a car, Mr. Boyer decided to walk to Ms. Exley's house and ask her to help look for the other two dogs.

[¶14]  Regarding the bleach, Mr. Boyer said the restroom at JB Auto Glass did not have soap or paper towels, but there was a bottle of 409 cleaning spray on the shelf.  He figured it was safe to use on hands and proceeded to wash his hands with it.  He then dried his hands on his shirt.  After he left the restroom, Mr. Boyer noticed he had bleach stains all over his shirt and told Mr. Billington it "wasn't a big deal."  While continuing walking to Ms. Exley's house, Mr. Boyer decided to throw away his shirt because it was hot outside and it was a throwaway shirt he wore for work.  According to Mr. Boyer, his son gave him a gray tank top to wear.

4

[¶15] Mr. Boyer testified that it was Ms. Exley's idea for Mr. Boyer to talk to his father, as she was concerned about his drug use and wanted his father to see how he was when he used methamphetamine. When he returned to his trailer, Mr. Boyer said he was apprehensive about talking to officers because he did not want them to know he was high. He testified the trailer was not insured. He also said that he never locked the trailer's doors. Mr. Boyer insisted he did not start the fire in his trailer that morning.

[¶16] The jury found Mr. Boyer guilty of first-degree arson. It found that he maliciously started a fire with the intent to damage an occupied structure. Mr. Boyer was sentenced to eight to fourteen years. He timely filed his appeal.

## DISCUSSION

### I. The State presented sufficient evidence to support Mr. Boyer's conviction.

### A. Standard of Review

[¶17] We review whether the State presented sufficient evidence to support a jury's conviction using the following standard:

> [w]e assume that the State's evidence is true, disregard any evidence favoring the defendant, and give the State the benefit of every favorable inference that may reasonably be drawn from the evidence. After examining the State's evidence, whether direct or circumstantial, we do not substitute our judgment for that of the jury, but instead, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. Furthermore, we defer to the jury as the fact-finder, and assume the jury believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt. Ultimately, our standard of review is not whether the evidence is sufficient for us, but whether, when viewed favorably to the state, it was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt.

*Hanson v. State*, 2025 WY 80, ¶ 7, 571 P.3d 1282, 1285 (Wyo. 2025) (quoting *Munoz v. State*, 2024 WY 103, ¶ 8, 556 P.3d 238, 240 (Wyo. 2024)).

5

## B.   Analysis

[¶18]  Mr. Boyer argues the State did not present sufficient evidence on two of the elements of first-degree arson.  He contends the State failed to show that he started the fire and that he had the intent to start the fire.  He asserts that there was no evidence directly connecting him to the fire, because there was no DNA evidence linking him to the fire and he denied starting it.  Mr. Boyer also asserts there was no evidence showing his intent.  He says the only motive the State presented was that "meth can make you do strange things."  Mr. Boyer also asserts he had no reason to burn down his trailer.  The State acknowledges the evidence was circumstantial, but it argues there was sufficient evidence to support the conviction.  It contends Mr. Boyer is confusing motive and intent, and the State was only required to show that Mr. Boyer acted without legal justification or excuse to prove intent.

[¶19]  "A person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure."  Wyo. Stat. Ann. § 6-3-101(a).  First-degree arson is a specific intent crime, and it requires the State to "prove beyond a reasonable doubt that the defendant acted maliciously with intent to destroy or damage an occupied structure."  *Harnden v. State*, 2016 WY 92, ¶ 8, 378 P.3d 611, 613 (Wyo. 2016).  "By definition, acting maliciously includes acting intentionally."  *Id*. at ¶ 10, 378 P.3d at 613.  We have held malice requires "proof *either* that the defendant acted 'without legal justification or excuse' *or* 'with ill will and hostility.'"  *Id*. (citing *Keats v. State*, 2003 WY 19, ¶ 16, 64 P.3d 104, 109 (Wyo. 2003)) (emphasis in original).

[¶20]  We find there was substantial evidence to support Mr. Boyer's conviction.  While there was no direct evidence linking Mr. Boyer to the fire, there was plenty of circumstantial evidence to support the jury's verdict.  Mr. Boyer was the last person to be seen in the trailer.  The doors to the trailer were locked, the windows were shut, and there was no sign of a break-in.  Ms. Haglund smelled and observed smoke just thirty minutes after Mr. Boyer left her home.  Ms. Haglund saw him walk toward the main road after borrowing her lighter.  The fire started in two or three spots and was lit on purpose.  Mr. Boyer was covered with bleach, which can be used to manipulate evidence.  Mr. Boyer discarded his bleach covered shirt before returning to his trailer.  Contrary to Mr. Boyer's story that his dogs ran away, officers found Mr. Boyer's dogs nearby, and Mr. Boyer said they often got out and would come back.[1]  A jury could reasonably conclude that Mr. Boyer started the fire, let his dogs out, and used the fact they got out as a pretense to give the fire time to burn and give him time to leave the scene.

---

[1] While there is conflicting evidence, such as Mr. Boyer saying he did not lock the trailer, we disregard this evidence, only consider evidence favorable to the State, and resolve any reasonable inference in favor of the State.

[¶21]  Simply because the evidence was circumstantial does not make it insufficient to support the conviction.  It is not unusual for the State to present circumstantial evidence in arson cases "because the very nature of the crime of arson ordinarily dictates that the evidence will be circumstantial."  *Montee v. State*, 2013 WY 74, ¶ 21, 303 P.3d 362, 366 (Wyo. 2013) (quoting *Vialpando v. State*, 494 P.2d 939, 941 (Wyo. 1972)).  "The law does not distinguish between direct and circumstantial evidence."  *Fitzwater v. State*, 2025 WY 88, ¶ 23, 573 P.3d 526, 532 (Wyo. 2025) (citing *Stroble v. State*, 2020 WY 158, ¶ 11, 478 P.3d 649, 652 (Wyo. 2020)).  "[E]vidence of opportunity to commit the act is a link, which considered in connection with other incriminating facts, may prove circumstantially that an accused did commit the crime."  *Ogden v. State*, 2022 WY 111, ¶ 18, 516 P.3d 870, 875 (Wyo. 2022) (citations omitted).  "The opportunity to commit the crime, when linked with other incriminating facts, may establish the guilt of the defendant."  *Id*. at ¶ 19, 516 P.3d at 875 (quoting *Brown v. State*, 2004 WY 57, ¶ 14, 90 P.3d 98, 103 (Wyo. 2004)) (citation modified).  In *Ogden*, we found there was sufficient evidence to support Mr. Ogden's conviction because a witness saw Mr. Ogden at the scene of the crime just before the crime occurred and there was nobody else within the vicinity.  *Id*.  Similarly, Ms. Haglund testified that Mr. Boyer borrowed her lighter and then walked out of the trailer park.  This puts him at the scene of the crime thirty minutes before Ms. Haglund noticed smoke from the trailer.  We find that this, along with the evidence discussed above, was enough on which a jury could form a reasonable inference of guilt beyond a reasonable doubt.

[¶22]  We also find that there was sufficient evidence presented to support that Mr. Boyer had the intent to burn his trailer.  "Direct evidence of intent is rare and, because circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone."  *Gonsalves v. State*, 2024 WY 49, ¶ 11, 547 P.3d 340, 343 (Wyo. 2024).  To prove the intent element of arson, the State had to show Mr. Boyer acted maliciously.  As we said, the State could have done this by showing that Mr. Boyer started the fire: (1) without legal justification or excuse; or (2) with ill will and hostility.  We find that there was sufficient evidence to show Mr. Boyer started the fire without legal justification or excuse.  The evidence shows the fire started in two or three places, and the cause was incendiary.  The jury found Mr. Boyer started the fire.  There is nothing in the record to suggest that he had legal justification or excuse to start the fire.  The fact that the State did not show that Mr. Boyer acted with ill will or hostility is inconsequential.  The jury could conclude that Mr. Boyer acted with malice because he did not have legal justification or excuse for his actions.

[¶23]  Mr. Boyer argues the State did not present sufficient evidence that he acted maliciously because it did not present evidence of his motive.  He says he had no reason to burn down his trailer, as it was not insured and he was planning on selling it.  Mr. Boyer appears to confuse motive with intent.  "Motive is generally defined as that which leads or tempts the mind to indulge in a particular act."  *Winters v. State*, 2019 WY 76, ¶ 82, 446 P.3d 191, 216 (Wyo. 2019) (quoting *Swett v. State*, 2018 WY 144, ¶ 39, 431

P.3d 1135, 1146 (Wyo. 2018)). Motive is not an element of any crime but instead it is an intermediate fact the State is permitted to prove. *Id*. On the other hand, specific intent crimes "refer to an intent to do a further act or achieve a future consequence." *Wyant v. State*, 2020 WY 15, ¶ 8, 458 P.3d 13, 16 (Wyo. 2020) (quoting *Cox v. State*, 829 P.2d 1183, 1185 (Wyo. 1992)). The State was required to show that Mr. Boyer acted maliciously, not why he acted maliciously.

[¶24] Finally, Mr. Boyer asks us to distinguish his case from *Harnden v. State*, 2016 WY 92, 378 P.3d 611 (Wyo. 2016) and *Esquibel v. State*, 2022 WY 89, 513 P.3d 148 (Wyo. 2022). He says unlike those cases, the State did not present evidence of his intent. We find those cases are irrelevant to Mr. Boyer's argument on the element of intent. In those cases, the State proved intent by showing that the defendants acted with ill will and hostility. Here, the State proved intent by showing Mr. Boyer acted without legal justification or excuse. Because the proof of intent in those cases was different, we need not distinguish them from Mr. Boyer's case.

## II.     *The district court correctly excluded the police report containing a former tenant's statement because it was inadmissible hearsay evidence.*

### A.     Standard of Review

[¶25] The ultimate question of whether a defendant's right to present a complete defense was violated is one of law, which we review de novo. *Detimore v. State*, 2024 WY 109, ¶ 8, 557 P.3d 1172, 1175 (Wyo. 2024) (citing *Farrow v. State*, 2019 WY 30, ¶ 52, 437 P.3d 809, 823 (Wyo. 2019)). We review a district court's decision to admit or exclude evidence under the abuse of discretion standard. *Anderson v. State*, 2022 WY 119, ¶ 11, 517 P.3d 583, 588 (Wyo. 2022) (citing *Barrett v. State*, 2022 WY 64, ¶ 41, 509 P.3d 940, 948 (Wyo. 2022)). "Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion. We need only determine whether the court could have reasonably concluded as it did." *Id*. (quoting *Klingbeil v. State*, 2021 WY 89, ¶ 32, 492 P.3d 279, 286 (Wyo. 2021)) (citation modified).

### B.  Analysis

[¶26] During trial, Mr. Boyer sought to introduce evidence to support his theory that an alternative suspect started the fire. Mr. Boyer previously rented the trailer to a woman named Julie. Approximately two months prior to the fire, Julie was evicted from the trailer by Andrew Norton, the owner of the trailer park. She texted Mr. Norton that she would burn the trailer down before giving it to him. He reported it to the police, and Officer Kristopher Hunter made a call detail report. In the report, Officer Hunter stated

he tried to call Julie and knocked on her door but could not contact her. The State made a motion in limine during trial to exclude evidence about Julie's tenancy and eviction by Mr. Norton, including Officer Hunter's call detail report, because it was not proper or admissible alternative suspect evidence. Mr. Boyer agreed there would be hearsay issues if he called Officer Hunter or Mr. Norton to testify about Julie's text, so he sought to admit the call detail report under Wyoming Rules of Evidence (W.R.E.) 803(8)(C). The district court granted the motion in limine and excluded the report, finding it was hearsay and did not meet the exception under W.R.E. 803(8)(C).

[¶27] Mr. Boyer argues the district court abused its discretion when it refused to allow him to introduce evidence of an alternative suspect to support his theory of defense. He contends evidence involving Julie's eviction was relevant and admissible under W.R.E. 803(1), 803(3), and 803(8)(C). Mr. Boyer asserts he would have been entitled to a jury instruction on his theory of defense if the evidence was admitted. The State argues the evidence was inadmissible because it was hearsay and not relevant.

[¶28] We have said the following on a defendant's right to present a complete defense and its limitations:

> The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986); *Hannon*, ¶ 62, 84 P.3d at 346. "[T]he Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes* [*v. South Carolina*], 547 U.S. [319] at 327, 126 S.Ct. 1727 [164 L.Ed.2d 503] [(2006)]. However, the Constitution does not prevent trial judges from applying well-established rules of evidence to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. *Id*. The Constitution permits judges to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice or confusion of the issues. *Id*.

*Detimore*, 2024 WY 109, ¶ 21, 557 P.3d at 1178 (quoting *Sparks v. State*, 2019 WY 50, ¶ 45, 440 P.3d 1095, 1109 (Wyo. 2019)). A defendant may present alternative suspect evidence to support his theory of defense. *See Mraz v. State*, 2014 WY 73, ¶ 8 n.2, 326 P.3d 931, 934 (Wyo. 2014). "Alternate suspect evidence is evidence intended to show that a crime was committed by a particular, identified individual or individuals other than the defendant." *Id*. The alternative suspect evidence must "demonstrate a direct nexus

between the alternate suspect and the crime charged to be admissible . . . the proffered evidence does not sufficiently connect the alternate suspect to the crime, as, for example, where the evidence is speculative and does nothing more than raise a suspicion, the evidence may properly be excluded." *Grady v. State*, 2008 WY 144, ¶ 13, 197 P.3d 722, 728 (Wyo. 2008) (citing *Bush v. State*, 2008 WY 108, ¶¶ 62, 68-69, 193 P.3d 203, 218, 220 (Wyo. 2008)). The alternative suspect evidence must be legal evidence and admissible at trial. *Id.*, ¶ 17, 197 P.3d at 729 (quoting *Bush*, ¶ 71, 193 P.3d at 220).

[¶29] Mr. Boyer attempted to offer two pieces of alternative suspect evidence at trial. First, he asked Ms. Haglund if she knew the people who lived in Mr. Boyer's trailer before he lived in it. The State objected to the question based on relevance. At trial, Mr. Boyer asserted Ms. Haglund's answer would be relevant because it would show how well Ms. Haglund watched the neighborhood.[2] Mr. Boyer also said his line of questioning was intended to see if Ms. Haglund knew the people who previously lived there, as they threatened to burn the trailer down. Mr. Boyer admitted he was not suggesting that Ms. Haglund had knowledge of the threat. The district court sustained the objection. Second, Mr. Boyer sought to admit Officer Hunter's call detail report, citing W.R.E. 803(8)(C). We find that the district court did not abuse its discretion by excluding this evidence.

[¶30] For the testimony to be admissible to show Julie was an alternative suspect, it had to sufficiently connect Julie to the arson. It did not and, therefore, was not relevant and was inadmissible. Mr. Boyer does not explain how Ms. Haglund's testimony would have connected Julie to the crime. He says Ms. Haglund was likely aware that Julie did not leave on good terms, may have observed the eviction notice on the door, or could have testified about visits from police officers. This is not supported by anything in the record and is speculation. Mr. Boyer said at trial that he just wanted to see how much Ms. Haglund knew about what was happening around her and was not going to go into evidence about Julie's threat. What was occurring around Ms. Haglund two months prior to the arson is not relevant to whether an alternative suspect started the fire. Even if Ms. Haglund had knowledge of Julie, it would not demonstrate a direct nexus between Julie and the arson. It does not put Julie at the trailer on August 2, nor link her to anything from that day. The evidence was too speculative, and the district court properly excluded it.

[¶31] Regarding Officer Hunter's report, we find that it was inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial

---

[2] On appeal, Mr. Boyer has not argued that Ms. Haglund's answer would have been relevant because it would show how well Ms. Haglund watched the neighborhood. Furthermore, Mr. Boyer did not make an offer of proof as to what Ms. Haglund's answer may have been. Without an offer of proof, we would be unable to determine if Ms. Haglund's answer was relevant to show how well she watched the neighborhood. *Widdison v. State*, 2018 WY 18, ¶ 44, n.5, 410 P.3d 1205, 1220 n.5 (Wyo. 2018).

or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). It is not admissible without an exception. W.R.E. 802. One exception is for certain public records and reports. W.R.E. 803(8)(C). Under that exception "factual findings resulting from an investigation made pursuant to authority granted by law," which are offered against the state in criminal cases, are not excluded under the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness." W.R.E. 803(8)(C). Under the rule, "it remains improper to introduce out-of-court statements not made by the investigating government official when the purpose is to establish the truth of the matter asserted in the statement." *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Eng'rs, Inc.*, 843 P.2d 1178, 1188 (Wyo. 1992) (quoting 4 David W. Louisell & Christopher B. Mueller, Federal Evidence § 455 (1980 & Supp.1992)).

[¶32] We find the district court properly excluded Officer Hunter's report because it does not satisfy the hearsay exception in W.R.E. 803(8)(C). Our reasoning is like our reasoning in *Seaton v. State of Wyo. Highway Comm'n, Dist. No. 1*, 784 P.2d 197 (Wyo. 1989). In *Seaton*, an officer made notes following a motorcycle accident, and the notes were incorporated into the official investigation file. *Id*. at 199-200. Ms. Seaton attempted to admit the notes through another officer, saying it was admissible under W.R.E. 803(8)(C) because it was part of the official record. *Id*. at 200. We found that it was hearsay and therefore inadmissible. We said the rule permits "the introduction of the first-hand observations and derivative factual findings of a reporting officer," but the problem with that part of the record was that it was not based on officer's first-hand knowledge or fact findings. *Id*. We found that it was, at most, factual assertions by a witness upon which the officer's findings could have been based on. We held the notes could not have been said to "have set forth either the first-hand knowledge or factual findings of a Highway Patrolman who made his own investigation and filed the official report. Thus, the notes were merely the hearsay of an outsider to the agency whose report was under consideration." *Id*. at 201.

[¶33] The same logic applies here. Officer Hunter's report does not contain his first-hand knowledge, nor was it based on his factual findings. It is a call detail report, indicating that Officer Hunter only spoke with Mr. Norton on the phone and did not actually see the texts between Julie and Mr. Norton. Even if he did view the texts, it still would not satisfy the rule because the texts are factual assertions by a witness. Officer Hunter attempted to develop his factual findings by trying to talk to Julie but was unsuccessful. The report was not based on first-hand knowledge and was therefore untrustworthy. The district court correctly denied its admission under W.R.E. 803(8)(C).

[¶34] Mr. Boyer argues, for the first time on appeal, that the text message could have been admitted under W.R.E. 803(1) and 803(3). He also says Officer Hunter and Mr. Norton would have been allowed to testify about the events surrounding Julie under the same rules. Since he did not raise this argument below, we review for plain error.

*Farrow*, 2019 WY 30, ¶ 22, 437 P.3d at 817. Plain error exists when "(1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice." *Id*. at ¶ 22, 437 P.3d at 817-18 (quoting *Garriott v. State*, 2018 WY 4, ¶ 21, 408 P.3d 771, 780-81 (Wyo. 2018)).[3]

[¶35] We find plain error does not exist because a clear and unequivocal rule of law was not violated. The Wyoming Rules of Evidence allow the admission of statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" and "of the declarant's then-existing state of mind, emotion, sensation, or physical condition.". W.R.E. 803(1) and 803(3). The text message did not meet either of the hearsay expectations. The text message was not a statement describing or explaining an event or condition that Julie was perceiving.[4] At most, it is Julie talking about a future event, which may or may not occur. This is certainly not her perception of an event as it was happening or immediately thereafter.

[¶36] Likewise, the text message was not an admissible statement of Julie's then-existing state of mind, emotion, sensation, or physical condition. While W.R.E. 803(3) allows statements about the declarant's intent, plan, or motive to be admitted, it must be for the purpose of showing the declarant's then-existing state of mind. This is not the case here. A review of the record shows that Mr. Boyer's purpose in offering the text message was to provide the jury with substantive evidence that Julie may have committed the arson, and was not to show her state of mind. *See Majors v. State*, 2011 WY 63, ¶ 29, 252 P.3d 435, 442 (Wyo. 2011) (finding a non-party's recorded statement about buying drugs from the defendant was not admissible under 803(3) because it was being used to prove the defendant delivered drugs instead of being used to show the declarant's state of mind). The text was inadmissible hearsay evidence without an exception.

[¶37] Finally, Mr. Boyer argues the district court prevented him from calling Officer Hunter and Mr. Norton from testifying. A review of the record shows this is not true. After excluding Officer Hunter's report, the district court told Mr. Boyer that he "may develop evidence along the way that will -- that will change things. And we can have,

---

[3] We remind parties that "[w]here the objection was not originally made on the ground now urged, the argument is without force. The objector should lay his finger on the particular point intended to be raised so that the trial court will have notice and an opportunity to cure the alleged error." *Farrow*, 2019 WY 30, ¶ 22, 437 P.3d at 817 (quoting *Buszkiewic v. State*, 2018 WY 100, ¶ 33, 424 P.3d 1272, 1282 (Wyo. 2018)).

[4] Mr. Boyer appears to believe that the text was admissible under W.R.E. 803(1) because it created a present sense impression on Mr. Norton that the trailer was in danger of being burned. The statement, however, must be a statement of the declarant's present sense impression. Julie was the declarant of the text message, not Mr. Norton, so the text had to be a statement of her present sense impression.

outside the presence of the jury, a discussion on whether there's some other way you think this statement is admissible." Mr. Boyer chose not to develop his evidence further, nor did he attempt to call Officer Hunter or Mr. Norton to testify. Therefore, a clear and unequivocal rule of law was not violated.[5]

[¶38] Having found no clear and unequivocal rule of law was violated, we find that plain error does not exist. Additionally, because the district court did not abuse its discretion by excluding evidence about Julie, Mr. Boyer's constitutional right to a complete defense was not violated.

## CONCLUSION

[¶39] We find that the State presented sufficient evidence to support Mr. Boyer's conviction for first-degree arson. We also find that the district court did not violate his constitutional rights when it excluded evidence about an alternative suspect, as the evidence was not relevant and inadmissible hearsay.

[¶40] Affirmed.

---

[5] Mr. Boyer briefly mentions that had he been allowed to present evidence on an alternative suspect, he would have been entitled to a jury instruction on his theory of defense. However, because the evidence was not admissible, he was not entitled to an instruction and a clear and unequivocal rule of law was not violated. *See Bruce v. State*, 2015 WY 46, ¶ 79, 346 P.3d 909, 932 (Wyo. 2015) (quoting *Drennen v. State*, 2013 WY 118, ¶ 20, 311 P.3d 116, 124 (Wyo. 2013)) ("[I]nstructions not based on the evidence can be properly refused.").